HENRY STEINACHER, APPELLANT, V. HARRY E. SWANSON, COUNTY TREASURER, APPELLEE: LOGAN A. ROGERS, INTER-VENER, APPELLANT.

FILED JULY 8, 1936. No. 29829.

440

*John C. Gewacke* and *Guy A. Hamilton,* for appellant Steinacher.

*Keith K. Turner,* for intervener, appellant.

*Sloans, Keenan & Corbett* and *William I. Aitken, contra.*

*William H. Wright, Attorney General, Milton C. Murphy* and *Lester A. Danielson, amici curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

The plaintiff, as a taxpayer, commenced this action against the county treasurer of Fillmore county praying for an injunction to restrain the defendant from complying with the provisions of House Roll No. 4, now chapter 15, Laws 1935, Special Session, on the ground that said act was unconstitutional and void. The trial court sustained a general demurrer to the petition and dismissed the action. From this judgment, plaintiff appeals.

It also appears from the record that one Logan A. Rogers was granted leave to file a petition in intervention in which he alleges that said act is unconstitutional for the reason that on November 6, 1934, an initiative petition was submitted to and adopted by the voters of the state which provided for a unicameral legislature for Nebraska; that on May 18, 1935, in accordance therewith, an act was passed declaring that the legislature should consist of one house with 43 members, while the special session which convened on October 28, 1935, consisted of two houses con-

trary to the provisions òf the Constitution and the statutes of Nebraska then in force. A general demurrer to the petition in intervention was sustained by the trial court and the petition in intervention dismissed. From this dismissal, the intervener also appeals.

We will first discuss the ruling of the trial court on the demurrer to the petition in intervention. It is the contention of intervener that chapter 15 was passed by an extraordinary session of the bicameral legislature at a time when it had been abolished by constitutional amendment. Section 1, art. III of the Constitution, as amended by the initiative petition adopted November 6, 1934, provides, in part, as follows: "Commencing with the regular session of the legislature to be held in January, nineteen hundred and thirty-seven, the legislative authority of the state shall be vested in a legislature consisting of one chamber." By the express statement of the constitutional amendment adopted, it was not to become effective until January, 1937. By its own terms, the amendment to the Constitution was not effective until the commencement of the regular session in 1937. Until it became effective the old bicameral legislature was the regularly constituted legislative authority in this state. The contention of intervener that the extraordinary session of the legislature had no legal existence, because of the amendments referred to, is without merit and the trial court very properly dismissed his petition.

It is contended by plaintiff that the title to the act is defective in that it violates section 14, art. III of the Constitution of Nebraska which provides, in part: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall be amended unless the new act contain the section or sections as amended, and the section or sections so amended shall be repealed." The title to the act is, in part, as follows: "An act relating to revenue; to provide for and accelerate the payment of delinquent taxes on real and personal property which have been delinquent for more than one (1) year prior to September 1, 1935, by permitting pay-

ment of all such taxes either by payment in full or in the case of personal property in five (5) annual equal instalments and in the case of real property in ten (10) annual equal instalments, without interest, penalties or other charges added thereto; to provide penalties for defaults; and to amend sections" (here follows a list of amended sections), "and to repeal said original sections, and to declare an emergency."

This act is clearly one which relates to the revenue. Its title sets forth the salient points covered in the body of the act, including the sections of laws amended and repealed. Without going into this subject further, we hold that the title to the act meets all the requirements of that part of the constitutional provision hereinbefore quoted.

The act in substance provides that (1) if a taxpayer on or before September 1, 1936, pays his 1935 real or personal taxes in full with interest and penalties, he may then discharge all of his real or personal taxes which became delinquent before September 1, 1935, by paying only the principal amount thereof without interest, penalties or costs added. (2) If he is not able to pay such delinquent taxes in full in cash, a method is provided by which he may pay his delinquent personal taxes in five annual instalments, or his delinquent real estate taxes in ten annual instalments, all without interest, penalties or costs. These provisions are made to apply where tax sale certificates have been issued to and are still owned and held by a county or other governmental subdivisions. The act, however, does not apply where the delinquent taxes have been sold to a *bona fide* purchaser and a tax sale certificate issued prior to the passage of the act. Neither does it apply where the tax was levied for a special purpose or levied as a special assessment.

It is first contended that the act violates section 4, art. VIII of the Constitution of Nebraska. This section provides: "The legislature shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or any corporation, or the

property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever."

While it is true that the act in question provides that interest, penalties and costs may be remitted or waived under certain contingencies, it has been established as a legal principle that interest, penalties and costs are no part of the tax and do not, therefore, fall within this provision of the Constitution.

In *Jones v. Williams,* 121 Tex. 94, 45 S. W. (2d) 130, the court said: "The word 'interest' in a delinquent tax act is a penalty for the failure to pay taxes at a designated time and is not part of the tax itself. It is imposed by the legislature in the nature of a fine, and the legislature having the power to impose it also has the power to repeal or cancel it."

In *Biles v. Robey,* 30 Pac. (2d) (Ariz.) 841, the court said: "We think it is obvious that the various impositions made by legislative authority for the failure to pay taxes when due, whether they are called interest, penalties, costs, or anything else, are in reality penalties and not debts. The question has been frequently discussed, and the decisions are almost entirely to the effect that where the original taxes themselves are not regarded as debts upon which legal interest is collectible in the absence of a statute authorizing it, any additional payment required by the legislative authority after a tax has become delinquent is no part of the tax itself, as interest is a part of the ordinary loan, but is a penalty which is merely a part of the procedure used by the state for the purpose of collecting the tax."

Other cases holding to the same effect are: *State v. Koeln,* 332 Mo. 1229, 61 S. W. (2d) 750; *Livesay v. DeArmond,* 131 Or. 563, 284 Pac. 166; *Henry v. McKay,* 164 Wash. 526, 3 Pac. (2d) 145; *State v. Hitsman,* 99 Mont. 521, 44 Pac. (2d) 747.

We therefore conclude that penalties, including interest

and costs, are no part of a tax and that the legislature is not prevented from waiving or remitting such penalties by the provision of the Constitution last above quoted.

Is the act in conflict with that part of section 4, art. VIII of the Constitution which provides "nor shall commutation for such taxes be authorized in any form whatever?" The word "commutation" is defined in Webster's International Dictionary as follows: "A substitution, as of a less thing for a greater; as, commutation of fares, copyright, or rations; specif., the substitution of one form of payment for another, or one payment for many, or a specific sum of money for conditional payments or allowances." An authoritative text-writer defines "commutation" as follows: "Alteration; change; substitution; the act of substituting one thing for another; a passing from one state to another. Also the conversion of the right to receive a variable or periodical payment into the right to receive a fixed or gross payment; a substitution of a less thing for a greater, especially a substitution of one form of payment for another, or one payment for many, or a specific sum of money for conditional payments or allowances, etc.; a substitution of one sort of payment for another, or of a money payment in lieu of a performance of a compulsory duty or labor, or of a single payment in lieu of a number of successive payments, usually at a reduced rate." 12 C. J. 215.

"Commutation" is defined in Words & Phrases (2d) as follows: "'Commutation' is a passing from one state to another; an alteration; a change; the act of substituting one thing for another; a substitution of one sort of payment for another, or of a money payment in lieu of a performance of a compulsory duty or labor, or of a single payment in lieu of a number of successive payments, usually at a reduced rate."

In *Woodrough v. Douglas County,* 71 Neb. 354, 98 N. W. 1092, our court discussed this identical provision of the Nebraska Constitution. The court said: "Again, commutation is a passing from one state to another; an alteration, a change; the act of substituting one thing for another;

a substitution of one sort of payment for another, or of a money payment in lieu of a performance of a compulsory duty or labor, or of a single payment in lieu of a number of successive payments, usually at a reduced rate."

It is quite apparent that the framers of the Constitution of 1875, the one first containing this provision, and the members of all subsequent constitutional conventions, have been imbued with the idea that all taxpayers are entitled to the same treatment by the government they support. For this reason they have expressly written into our Constitution that the legislature not only shall have no power to release or discharge any one from the payment of his share of taxes, but a commutation for taxes *in any form whatever* is prohibited. (Italics ours.) From an examination of the definitions of the word "commutation" hereinbefore set out, and the use of the words "in any form whatever," contained in our constitutional provision, it is quite apparent that the legislature is prohibited by the Constitution from changing the method of payment of any tax once levied. Clearly, under this constitutional provision, the legislature cannot reduce the amount of the tax, extend the time of payment, or in any manner change the method of payment. The time of payment has been extended by the terms of the act under consideration. The taxing authorities are prohibited from foreclosing their tax liens in those cases falling within the act. We are obliged to hold that chapter 15, Laws 1935, Special Session, contravenes that part of section 4, art. VIII of the Constitution, which provides, "nor shall commutation for such taxes be authorized in any form whatever."

In *County of Lancaster v. Trimble,* 33 Neb. 121, 49 N. W. 938, the court, in a case involving a statute permitting counties to purchase tax sale certificates and foreclose them, except that no action could be brought unless the amount due exceeded $200, held that the statute violated the constitutional provision herein quoted. The court said: "The legislature is without power to release any inhabitant or corporation from his or its proportionate share of

taxes, nor can it confer such authority upon county commissioners. It has authorized them to purchase real estate at tax sale, but has provided for the foreclosure of tax certificates in their hands only when the amount due thereon exceeds a specified sum. The proviso clause of the section of the statute quoted expressly prohibits county commissioners from foreclosing tax liens when the amount of the lien is $200 or less. It, in effect, places it in the power of county commissioners to release the taxes upon lots and lands where the amount of the delinquent taxes thereon is. not over $200. All they would have to do to accomplish it is to purchase that kind of property for the county at tax sale. The legislature is powerless to confer such authority. It cannot do indirectly what the Constitution prohibits it from doing directly; that is clear. *Wood v. Helmer,* 10 Neb. 65, 68." On rehearing, *id.,* 34 Neb. 752, 52 N. W. 711, the court said: "It is insisted that, even if the right to foreclose the lien exists, still the amount claimed must exceed $200 to authorize the institution of an action. After a very careful examination of the entire question we are satisfied that our former opinion is right."

In *County of Lancaster v. Rush,* 35 Neb. 119, 52 N. W. 837, a case involving the same statute as was considered in *County of Lancaster v. Trimble, supra,* the court said: "It is urged that the petition did not allege a cause of action, because the amount claimed to be due upon the tax certificate does not amount to $200. The precise question was before the court in *County of Lancaster v. Trimble,* 33 Neb. 121, and the same case upon rehearing, decided at the present term, 34 Neb. 752, and it was held that the proviso clause of section 1, article 4, chapter 77, Compiled Statutes, restricting the foreclosure of tax liens by counties to cases where the amount due on the tax certificate exceeds the sum of $200, is inimical to the provisions of section 1, article 9, of the Constitution. The conclusion there reached is sound. The Constitution requires that all the taxable property in the state shall contribute its proportionate share of taxes, and prohibits the legislature from releasing the

property of an individual from the taxes imposed thereon. The only remedy for the enforcement of the collection of the tax levied on the real estate in question is by foreclosure proceedings, and if such action cannot be maintained because the amount due is less than $200, then said real estate is released from said taxes, and an increased burden will necessarily fall upon other property. We adhere to the conclusion of the court announced in the second hearing, *County of Lancaster v. Trimble, supra,* to the effect that, in addition to the special provisions of statute providing for the foreclosure of a tax lien by a county, the power is conferred by sections 1 and 2, article 5, chapter 77, Compiled Statutes."

It will be noted in the cases last above cited that a law which makes it possible for a taxpayer to escape his tax obligation to the state is violative of section 4, art. VIII of the Constitution. It must be conceded that, if the legislature has the power to extend the time in which taxes must be paid, as was done in the instant case, it could repeat the extensions or extend them for such a duration of time that it would amount to a remission of the tax. Under the cases cited, the legislature is without power to so do. The legislature cannot accomplish indirectly what it may not do directly. As has often been said, it is not what has been done but what can be done under a statute that determines its constitutionality. We submit that, under the act before us, the legislature could effect a complete remission of taxes by the indirect method mentioned. In *County of Lancaster v. Rush, supra,* the statute prevented foreclosure of the tax lien where the amount due thereunder was less than the fixed amount of $200, while in the case at bar the statute prevents the foreclosure of the tax lien by postponing the date when foreclosure can be brought. We hold that the act in question is unconstitutional for the reason that, if it be upheld, it places it within the power of the legislature to circumvent the express prohibition of the Constitution against releasing or discharging any person from the payment of his proportionate share of taxes.

It is quite clear that the act is not violative of section 1, art. VIII of the Constitution, which requires that "taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property," for the reason that the waiver or remission of interest, penalties or costs does not involve a tax. Our Constitution does, however, contain the following provision: "The legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted." Const. art. III, sec. 18.

The general rule is: A law which is general and uniform throughout the state, operating alike upon all persons and localities of a class, or who are brought within the relations and circumstances provided for, is not objectionable as wanting uniformity of operation. The classification must be reasonable and not arbitrary. *Cleland v. Anderson*, 66 Neb. 252, 92 N. W. 306; *Livingston Loan & Building Ass'n v. Drummond*, 49 Neb. 200, 68 N. W. 375. In *State v. Hall*, 129 Neb. 669, 262 N. W. 835, the court said:

"By section 18, art. III of the Constitution, the legislature is prohibited from passing any act granting to an individual any special or exclusive privileges or immunity, and it is provided that, in all cases where a general law can be made applicable, no special law shall be enacted. *Held*, to prohibit class legislation which does not operate equally and uniformly upon all members of the class brought within its operation.

"The legislature may make a reasonable classification * * * concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated."

It will be noted that this statute applies only to persons owing delinquent taxes on or before September 1, 1935. It does not apply to real property taxes for which tax sales certificates were theretofore issued to any one other than a county or other governmental subdivision. Neither does it apply to any taxpayer who becomes delinquent in the payment of his real property taxes after September 1, 1935, nor to any taxpayer who fails to demand the benefits of the act prior to the date that the second instalment of his 1935 real estate taxes becomes delinquent. It discriminates between delinquent taxpayers whose taxes are sold to a private person and those sold to the county or other governmental subdivision. It also discriminates against the delinquent taxpayer whose personal taxes became delinquent after September 1, 1935, and those who became delinquent prior to that time, and against those who fail to demand the benefits of the act prior to December 1, 1936. The act discriminates between taxpayers whose delinquent real estate taxes were sold to a *bona fide* purchaser before the passage of the act and those whose delinquent taxes were sold to a *bona fide* purchaser thereafter, the former being excluded from the operation of the act and the latter being included. Neither does it appear in the act that the sale of lands for delinquent taxes is in any way restrained unless and until the delinquent taxpayer complies with the provisions of the act. In view of our decision on other grounds, we will not indulge in a discussion of the question of the inclusion within the act of delinquent taxpayers whose lands were sold for taxes to a *bona fide* purchaser after the passage of the act, and the effect thereon of the constitutional provision prohibiting the impairment of contracts. In our judgment, the act makes an arbitrary classification of persons upon whom the benefits of the act fall.

In *Rosenbloom v. State,* 64 Neb. 342, 89 N. W. 1053, Judge Sullivan, in discussing the question of uniform classification, said: "A further contention of counsel for defendant is that, by reason of the exceptions contained in section 152, the law lacks the essential requirement of

uniformity. The Constitution (art. 9, sec. 1) declares that the legislature may impose a tax upon persons engaged in certain occupations 'in such manner as it shall direct by general law, uniform as to the class upon which it operates.' This provision undoubtedly contemplates that all persons pursuing the same business or calling under the same conditions and circumstances shall be treated alike, and subjected to the same burdens; in other words, partiality and favoritism are forbidden, and equality before the law is made a rule of legislative action. But as was said by the supreme court of Pennsylvania in *Seabolt v. Commissioners of Northumberland County*, 187 Pa. St. 318, 'Classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones, used for the purpose of evading the constitutional prohibition.' In the case of *State v. Farmers & Merchants Irrigation Co.*, 59 Neb. 1, 4, we had occasion to consider this question, and reached the conclusion, after a pretty thorough examination of the authorities, that the 'classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified.' "

In *State v. Fischl*, 94 Mont. 92, 20 Pac. (2d) 1057, a case discussing this identical subject, but which was overruled on other grounds, the court said: "The act, therefore, advances a plan which would operate to reward a taxpayer who has not paid his tax at the expense of one who has. The taxing authorities received the money of the one who paid his taxes and have since withheld it; this taxpayer must suffer for having paid his taxes to the extent that he has been without the use of his money since he paid, while the other, who did not pay, would save by failing or refusing to pay. But as was said respecting the 1923 act, 'the act upon its very face discriminates in favor of one who, although unable to prevent delinquency by pay-

ment, was fortunate enough to have his property struck off at tax sale to the county as against another whose property at the same time was struck off to a citizen. The latter, to effect a redemption, must pay the original tax, addition, interest, and costs; or, if the county has assigned its certificate of sale to a citizen, the redemptioner must assume and discharge a like burden.' *Sanderson v. Bateman*, 78 Mont. 235. In so far as the law operates upon taxpayers of the same class, requiring, as it does, full payment from some delinquents and the remission of taxes as to others, it does not afford to all in the same class the equal protection of the laws and is contrary to the Fourteenth Amendment."

While it is true that the above quotation did not concern the precise point before us, its reasoning is applicable in support of the proposition that the statute before us violates the provisions of section 18, art. III of the Nebraska Constitution. The situation before us is well expressed in *State v. Fischl, supra,* where the Montana court used the following language: "The wellspring of the act was to alleviate the condition of our unfortunate fellow citizens who, unable to pay their taxes, were forced to see their lands sold at tax sales. In the view of the legislature, as expressed in section 4 of chapter 41, an extraordinary emergency existed by reason of the present world-wide economic condition. Whether the policy of favoring some taxpayers of the same class over others is wise or unwise, the emergent conditions considered, is not for us to decide, nor was it a subject upon which the legislature had a right to legislate, for the expression of the supreme will of the people— the Constitution—decides the policy for us all. It must be remembered that the provisions of the Constitution are mandatory and prohibitory unless otherwise expressed, and these provisions read the same whether in fair weather or in foul. The proposition that an emergency justifies a removal of constitutional safeguards is an egregious fallacy. A safeguard once let down inevitably must lead to mischief. If one be let down, why not another? 'And many

an error, by the same example, will rush into the state.' Our duty is clear. Each of us upon assuming office took an oath 'to support, protect, and defend the Constitution of the state of Montana,' and from this obligation we shall not shrink."

We are aware that some authorities hold that constitutional requirements as to uniformity of operation do not apply to statutes providing for a waiver or remission of a penalty. Penalties, including interest and costs, are generally considered punitive in their nature and a statute remitting them is one of grace to which the question of uniformity has no application. But, as to the extensions of time for payment of the principal amount due as taxes, the question of uniformity of operation upon a class becomes important. To say that one delinquent taxpayer can have an extension of time for the payment of his taxes, while another delinquent taxpayer, because of the arbitrary classification made by the legislature, must pay in full, including all interest, penalties and costs, is such discrimination as to warrant the holding that the classification is unreasonable and arbitrary and therefore void.

In *Ewert v. Taylor*, 38 S. Dak. 124, 160 N. W. 797, the court said: "Defendant contends that chapter 64 is unconstitutional because it provides that certain taxes assessed thereunder must all be paid on or before March 30th, while all other taxes, even certain taxes assessed under this same law, can be paid one-half on April 1st, and the other half on or before October 31st. This provision requiring payment on an earlier date is one which, from its nature, can only result in inequality—the use of money being a thing of value. There is a fundamental difference between laws under which lack of uniformity and equality may arise owing to defects in human judgment, and laws which absolutely contravene the provisions of the Constitution by themselves creating a lack of uniformity and equality. The mere fact that such lack of uniformity or equality may be slight cannot be considered in support of a law so inherently bad."

We have come to the conclusion that, for the reasons herein stated, the act under consideration is violative of the Constitution in the respects noted and is therefore void. The trial court erred in sustaining defendant's demurrer. The judgment of the trial court is therefore reversed and the cause is remanded for further proceedings in accordance with this opinion.

REVERSED.

PAINE, J., dissenting.

I most respectfully dissent from the opinion adopted by the court in this case, and submit herewith my reasons for not supporting it.

While it is impossible to present even an abridged summary of the 33 pages of this new law under discussion, yet it is necessary to state briefly what H. R. No. 4 (Laws 1935, Special Session, ch. 15) purports to do. First, it provides that, if a taxpayer on or before September 1, 1936, pays his 1935 real or personal taxes in full, with interest and penalties, he may then discharge all of his real or personal taxes which became delinquent before September 1, 1935, by paying only the face amount thereof, without interest or penalties added. If he is not able to pay such delinquent taxes in full in cash, a method is provided by which he may pay his delinquent personal taxes in five annual instalments, or his delinquent real estate taxes in ten annual instalments, all without interest or penalties. These provisions remain in force even if a tax sale certificate has been made out to the county, but do not apply in case the delinquent real estate taxes have been purchased by a *bona fide* purchaser and a tax sale certificate duly issued to such purchaser. It is further provided that, if the tax was levied for any kind of special assessments, the law does not apply. The act expires for all purposes in the year 1944. It sets out every section of statute amended by this law.

This H. R. No. 4 should be examined with care because of the fact that this court held that a similar act was unconstitutional because the title was defective in that it

failed to set out either the sections amended or the sections repealed. *Tukey v. Douglas County,* 129 Neb. 353, 261 N. W. 833. It appears that particular care was taken by the legislature in reenacting this similar law to meet all the objections made in the opinion in that case.

"It has been said that the eyes of the courts are never limited to the mere letter of a law, but that they may look behind the letter to determine its true purpose and effect." 6 R. C. L. 81, sec. 80.

With that in mind, it is proper to ascertain the facts causing the passage of similar laws in so many states, and for this second attempt by our Nebraska legislature to pass this form of law.

One of the most exhaustive articles on the increasing tax delinquency is that found in 28 Ill. Law Review, 147, written by Herbert D. Simpson, professor of economics at Northwestern University, in which is found the following facts: In Michigan taxes were delinquent in 1932 upon 15,660,000 acres of land. In the five states of Michigan, Wisconsin, Minnesota, South Dakota, and Oregon, the taxes on 40 million acres of land are delinquent. To show that this is not solely a rural problem, there was a delinquency in 162 cities of New Jersey of $65,449,441, and in the city of Cleveland in a recent year 192,000 parcels of land, or one-half of the total tracts of real estate of the city, were delinquent, and in Cook county, Illinois, 41 per cent. of the tracts of land was delinquent in the payment of taxes. This tax delinquency has crippled finances, impaired the credit of municipal governments in most of the larger cities, and created virtual insolvency in many school districts. It is said that this tax delinquency on real estate is an indictment of the system, for there is no such delinquency on excise taxes, gasoline taxes, income or inheritance taxes. The fundamental remedy is to modify our system, which imposes real estate taxes without any reference to the income or tax-paying ability of the property itself. In the past it was sought to avoid delinquent real estate taxes by stiffening up the collection procedure, by

giving speedier action, heavier penalties, and a less expensive process to get a valid deed into the hands of purchasers of tax liens. In the present financial depression these time-tried plans have absolutely failed, and the present trend of legislation is to give longer periods of redemption, less severe penalties, and cut off excessive interest and costs.

With this general review of the whole situation in mind, and with ·the desire of examining the problem which the legislature faced in Nebraska, the first question that arises is, what is the amount of delinquent taxes now outstanding in Nebraska? The Nebraska State Historical Society has compiled an estimate of the delinquent ·taxes for 1935. This report is set out in the appendix, beginning on page 341, of a new book entitled, "Land Systems and Land Policies in Nebraska," by Addison E. Sheldon. A careful study was made by several assistants of all the delinquent tax lists as published in each of the 93 counties in 1935. The number of tracts on which the delinquent taxes were advertised for sale ran from 238 in Grant county to 24,948 in Douglas county, with about half this number in Lancaster county. The total tracts advertised for sale for delinquent taxes in the state were, by their careful estimates, placed at 225,273, with an estimated total delinquent tax in Nebraska of over $46,000,000 in the fall of 1935. As it is known that the 1934 real estate taxes levied in Nebraska amounted to $30,835,831, it therefore shows the enormous amount of delinquent taxes now outstanding.

This is the real problem which faced the Nebraska legislature when it passed this law. High interest and sharp penalties had proved an absolute bar to the payment of delinquent taxes. The plan of waiving the interest would lighten the burden of delinquent taxpayers, but it would serve more important purposes, for it would get in needed money from delinquent taxes, and get these thousands of tracts of land back on the tax rolls to pay current taxes and probably all taxes due hereafter.

Our legislature was not proceeding ·into untried fields,

for many states have passed laws waiving the payment of interest, penalties, and costs on delinquent taxes. In the year 1933 six states placed such laws on their statute books. *State v. Baldwin,* 62 Minn. 518, 65 N. W. 80; *City of Rochester v. Bloss,* 185 N. Y. 42, 77 N. E. 794, 6 L. R. A. n. s. 694; 18 Minn. Law Review, 849.

It will give a better grasp of the trend of the recent decisions on this new form of tax relief if we examine briefly the recent delinquent tax laws passed in many states, and also note the reasons given by the supreme court in each state for declaring such a law valid and constitutional. An examination will disclose that in all these states some method was devised of waiving interest and penalties, especially those charged as part of tax sale certificates. It will be noted that in these opinions nearly every objection made to H. R. No. 4 is discussed and ruled upon.

While many states have been compelled to adopt this method of relief for delinquent taxpayers since the world-wide financial depression began in 1929, yet at least two states, Oregon and North Dakota, had pioneered in such laws in their legislative sessions of 1925, due to local adverse financial conditions, which early laws are each discussed herein.

In the opinion in *State v. Lawler,* 53 N. Dak. 278, 205 N. W. 880, the chief justice of that state wrote a long opinion, concurred in by all of the other members of the court, covering this subject, and finding that a law cutting down interest on tax sales was a valid exercise of legislative power. He says delinquent taxes upon desirable land are bought in by private bidders, but if the land is of little value no buyer is interested, and a tax certificate is issued to the county, which does not become the owner in the sense that it has parted with anything of value, for the certificate simply represents the uncollected taxes in another form to assist in the collection. The state itself has a direct interest in such county tax certificate. The opinion holds that such law does not violate the Constitution as being a special law (25 R. C. L. 813, sec. 65), nor is it a

local law which applies to some specific locality, for it operates alike on all persons and property similarly situated in the entire state. 6 R. C. L. 405, sec. 400. The opinion then adds: " 'Legislative discretion in this matter is not subject to review by the courts, except to the extent of determining whether the classification adopted is arbitrary, unreasonable, and unjust. As in all other cases, * * * all reasonable doubts are to be resolved in favor of upholding the validity of legislation establishing a classification; and the legislative judgment as to classification can be overthrown by the courts only when it is clearly erroneous.' 12 C. J. pp. 1128, 1129." See Cooley, Taxation (4th ed.) sec. 1254; 26 R. C. L. 385, sec. 342. This decision makes clear that county tax sales are entirely different from those sold to *bona fide* purchasers.

In Louisiana the 1934 legislature, by act No. 161, granted a right to redeem delinquent taxes by paying the face of the taxes alone in instalments. This act came to the supreme court in the case of *State v. Grace,* 182 La. 405, 162 So. 26, and involved the following state of facts: The state had secured title to a tract of land through the nonpayment of taxes, and leased this land, inserting in the lease the provision that the land was subject to legal redemption by the owner upon payment of the delinquent taxes. The supreme court held that the new law allowing delinquent taxes to be paid off in instalments by the former owner without interest was not unconstitutional, even as applied to this particular case, as impairing the obligation of the lease, although at the time when the state gave the lease such taxes could only have been redeemed by paying the delinquent tax in full with all interest and penalties.

The case of *Livesay v. DeArmond,* 131 Or. 563, 284 Pac. 166, 68 A. L. R. 422, was heard by the Oregon supreme court sitting *en banc,* and with no dissenting opinion, it was held that waiving or reducing the penalty or interest, or both, on delinquent taxes, if such action appears likely to facilitate the collection of taxes, does not violate the constitutional provision that all taxes shall be levied under general laws operating uniformly.

An earlier case in Oregon, *State v. Coos County*, 115 Or. 300, 237 Pac. 678, held that the Oregon law of 1925, p. 612, did not conflict with the constitutional provision as to equality and uniformity: "We do not regard this, however, as an act regulating taxation, but merely as an act remitting certain penalties, which would otherwise have accrued but for its passing. The act of taxation had already been performed when the tax was properly levied by the authorities in Coos county, and this did not authorize the levying of any taxes, or regulate the manner in which they should be paid, but was an act of grace remitting certain penalties, but for which, the parties named in the act would have been liable." This act also recited the severe handicaps, as much of the grain of eastern Oregon had been frozen, and farmers suffered under severe handicap due to the general depression in agriculture.

In deciding that a similar law was constitutional in Kentucky, and that an act reducing the rate of interest and penalties applied to lands sold for taxes to the county prior to its enactment, the court of appeals of Kentucky said it is a matter of general knowledge that, during the prevalence of the existing oppressive economic conditions, there were, prior to the enactment of the act of 1932, many sales of land of taxpayers for the payment of their delinquent taxes for the years 1928 to 1932. "It must be presumed that the legislature was cognizant of the general effect of these sales, when it enacted the act here involved. The court in construing every act, and declaring its effect, should effectuate the obvious intention of the legislature; and this doctrine applies with special force when it is apparent its intention conserves a wholesome purpose." *Grieb v. National Bank of Kentucky's Receiver*, 252 Ky. 753, 68 S. W. (2d) 21.

In *State v. Butts*, 111 Fla. 630, 149 So. 746, 89 A. L. R. 946, we find a main opinion, with several concurring opinions, all holding that the recent Florida law providing reasonable extensions, reductions, and privileges to facilitate redemption of lands under tax certificates held by the

state, was valid. It was said that the law was not misleading, nor did it cover more than one general subject, and that the law would, in the judgment of the legislature, best conserve the interests of taxing units having rights in the unpaid delinquent taxes included in such tax certificates. In *State v. O'Quinn,* 114 Fla. 222, 154 So. 166, in discussing the above case it was said that the legislature had the right to protect the state and the other subdivisions having justiciable rights in these delinquent tax sale certificates.

In *State v. Bair,* 333 Mo. 1, 63 S. W. (2d) 64, a law permitting the payment of delinquent taxes without interest or penalties was held by the supreme court of Missouri, sitting *en banc,* not to violate the Constitution as an *ex post facto* law, the court saying it simply provides a different remedy for the collection of back taxes, and of the right of .the legislature to change the method or remedy in such a case as this there can be no doubt. To the same effect is *Backus v. Fort Street Union Depot Co.,* 169 U. S. 557, which held that a state may adopt new remedies for the collection of its taxes and apply such new remedies to taxes already delinquent, without any violation of the federal Constitution.

The Texas legislature passed a similar law remitting penalties on tax delinquencies provided they were paid before a certain date, and the supreme court in the exhaustive opinion entitled *Jones v. Williams,* 121 Tex. 94, 45 S. W. (2d) 130, 79 A. L. R. 983, held that a state legislature could enact all laws not prohibited by the Constitution, either in express terms or by necessary implication. It then declared that a constitutional provision prohibiting the legislature from remitting fines, penalties, and forfeitures by special laws implies the power on the part of the legislature to remit such fines and penalties by a general law, and that, therefore, the waiving of interest and penalties on delinquent taxes by a general law was constitutional. It admitted that exemptions from penalties in taxation laws must be very strictly construed, and not extended beyond the express requirements of the language used. Annotations upon this subject appear in 68 A. L. R.

431 and 79 A. L. R. 999. In *Pate v. Ross,* 84 S. W. (2d) (Mo.) 961, it says: "Statutes should be construed so as to effectuate purpose of their enactment, and words may be restricted or extended to accomplish that purpose."

A later Texas case is that of *McGruder's Unknown Heirs v. State,* 68 S. W. (2d) (Tex. Civ. App.) 519, in which is said, in passing on the same kind of a law, that the ever-increasing millions of dollars of delinquent taxes due the state, counties, cities, and school districts in many instances exceeded the total tax assessed for an entire year. The purpose and intent of the law is not to make any citizen immune to paying taxes, but it is to offer inducements for the prompt payment of delinquent taxes, for the act extends a mere privilege to a delinquent taxpayer of paying without interest added, but it is only a privilege, and not a right of immunity to avoid the tax itself as levied.

The supreme court of Missouri, sitting *en banc* and with all judges concurring, recently rendered an opinion upon this question in the case of *State v. Koeln,* 332 Mo. 1229, 61 S. W. (2d) 750. The court stated that it took judicial notice of matters of common knowledge and current history as related to affairs of public interest, such as the depleted condition of public and private financial resources and the inability for lack of tax collections for the schools to function adequately, and that it realized the great volume of unpaid taxes delinquent throughout the state. The Missouri court held that this law did not violate a constitutional provision prohibiting releasing an indebtedness due to the state on the ground that this provision of the Constitution applied only to an obligation which had become fixed, and that a penalty attached to the payment of delinquent taxes is not a fixed obligation.

In *Henry v. McKay,* 164 Wash. 526, 3 Pac. (2d) 145, it was held that the state could, through the legislature, release the delinquent property owner from liabilities due to the state and make the statute retrospective in its operation. There would be no impairing of the obligation of a

contract. Taxes are not imposed by contract. The state may pass such retroactive laws as only waive the state's right without violating the Constitution. Black's Constitutional Prohibition, sec. 221. Surely, if the state may waive the penalty for encouraging payment of delinquent taxes in its entirety, it logically follows that the state may reduce the interest rate on delinquent taxes.

In *Biles v. Robey*, 30 Pac. (2d) (Ariz.) 841, the court had before it a very similar law permitting the payment of real estate taxes delinquent on June 1, 1933, to be made in 20 semiannual instalments, with only 6 per cent. interest from June 1, 1933, instead of 10 per cent. interest provided for delinquent taxes theretofore. It was held that it did not violate constitutional provisions forbidding special privileges and guaranteeing equal rights, since the classification of taxpayers resulting from the law is based on reasonable and natural differences. The court said, in effect: We hold, therefore, that it was the intention of the legislature to remit all accrued interest, costs, and penalties, provided the taxpayer would comply with the conditions set forth in the chapter. We are led to believe this, said the Arizona court, when we consider the general conditions existing in the state and nation, which conditions are so notorious that this court takes judicial notice thereof, which undoubtedly caused the enactment of the chapter; that a great economic depression has covered all parts of the land; that many property owners through no fault of their own have had their incomes entirely destroyed or else depleted so they could only furnish the bare subsistence for themselves and their families; that this destroyed their ability to pay their taxes, no matter how great their desire to do so. If the taxpayer's income has failed, and his property is unsalable, the tax cannot be paid, and legislative bodies in many states have passed measures of a similar kind, intended to relieve taxpayers who have fallen into *bona fide* misfortune; that these measures, while differing in language, have generally followed the same course of relieving taxpayers from accrued penalties and giving him more time to pay his taxes.

The experience of Montana with this form of law is very interesting, and worthy of most careful study. Four acts of the legislature, all relating to reduction of interest and penalties, have been carefully considered by the supreme court of Montana. The first two acts of the legislature to relieve delinquent taxpayers of interest and penalties were very promptly held unconstitutional. The first act was held void in *Sanderson v. Bateman*, 78 Mont. 235, 253 Pac. 1100. This law was quite similar to H. R. No. 4 in the case at bar. It came to the supreme court of Montana as an original action to obtain a mandate commanding the county treasurer to permit the redemption of lands from tax sale under the new law. The supreme court held that the legislature had no authority to relieve a delinquent taxpayer in this way, and the demurrer was sustained and the action dismissed.

Then the second law was passed for the same purpose in 1933, and this came before the supreme court in *State v. Fischl*, 94 Mont. 92, 20 Pac. (2d) 1057. A taxpayer sought a writ of injunction prohibiting the county treasurer from putting the new law into effect on the ground that it was unconstitutional and void, and as the question affected the entire state and was of general interest, the court assumed original jurisdiction. This second act provided that real estate sold to a county for taxes could be redeemed within a certain period without paying interest or penalties. The court stated very sharply that, by its decision in *Sanderson v. Bateman, supra,* the legislature was charged with knowledge that the supreme court had held that the Constitution prohibited the remission of such penalty and interest, and that a question once deliberately examined and decided should be considered settled. However, in spite of the two decisions, two years later the legislature passed two acts along the same line to relieve the distress of the taxpayers. Chapter 88, Laws 1935, again permitted real estate to be redeemed from county tax sales by paying the original tax, without penalty or interest. As this was the third act which had been passed of this nature, it is of interest to

note the preamble to this act, in which the legislature set out that its two former acts had been held unconstitutional, but that, in response to a demand of an intelligent public, this third act was passed, not for the purpose of destroying or seriously impairing constitutional government in the state of Montana, but only to assist and aid taxpayers within reasonable grounds. This 1935 act was promptly brought before the supreme court in the case of *State v. Hitsman,* 99 Mont. 521, 44 Pac. (2d) 747, and the court cited its first two opinions in which it had held that such acts were beyond the power of the legislature to pass, and then added: "While we do not feel justified in overruling previous holdings of this court merely because of the asserted and established emergency, we shall attempt to demonstrate the proper rule as applicable to the statute under consideration, regardless of the previous decisions of this court." "Construction placed upon constitutional provision in former decision will not prevail under the rule of *stare decisis,* where manifestly wrong. * * * Every possible presumption is indulged in favor of constitutionality of statute, and statute will not be pronounced invalid unless its unconstitutionality is made manifest beyond reasonable doubt. * * * Statute providing for redemption within specified period of real estate sold to county for taxes without payment of penalty or interest *held* not violative of Fourteenth Amendment to federal Constitution or of provision of state Constitution for uniformity of taxation." The opinion then frankly admitted that the court had erred in basing its two prior decisions upon the wrong premise, to the effect that penalty and interest were a part of the tax proper, and concluded that, after a careful consideration, the court had finally reached the conclusion that the new law did not violate any of the constitutional provisions to which its attention had been called.

However, to show that the Montana supreme court was still vigilant in protecting all the provisions of the Constitution relating to taxation, we find that the same 1935 legislature enacted another law relating to taxation, being

chapter 149, which provided that application could be made by delinquent taxpayers to the county commissioners of any county, whereupon such commissioners could enter into a special written contract with each particular taxpayer, which contract would provide that he could under certain conditions pay delinquent taxes without interest, and that no tax deed could issue except to the county clerk. This very complicated and ambiguous act was brought to the supreme court, and in *State v. Leslie*, 100 Mont. 449, 50 Pac. (2d) 959, the Montana court promptly declared it invalid, and quite naturally referred to its former opinion in *State v. Hitsman, supra,* and still adhered to its ruling therein, and added that its opinion in that case was supported by common sense and sound reasoning.

We have now presented briefly opinions from North Dakota, Louisiana, Oregon, Kentucky, Florida, Missouri, Texas, Washington, Arizona, and Montana, which have held similar laws waiving interest and penalties on delinquent taxes to be valid, yet the courts of these states are just as careful as that of Montana in holding that new tax laws which violate their respective Constitutions are invalid. Let me very briefly give examples to illustrate this fact. For instance, in Texas the greater part of Hidalgo county was greatly damaged by repeated floods in the years 1904, 1909, 1919, and again in 1922, and the legislature of 1923 passed an act releasing the inhabitants and property of that county from the payment of state taxes for a period of 25 years. In an exhaustive opinion it was recently held that giving the inhabitants of an entire county the right not to pay taxes was an exemption from taxes, and contravenes the constitutional provision requiring equal and uniform taxes. *Sheppard v. Hidalgo County*, 83 S. W. (2d) (Tex.) 649.

Again, to show that the courts of these states have not let down the bars too far, we find that in *Odell v. Commerce Farm Credit Co.*, 67 S. W. (2d) (Tex. Civ. App.) 626, it was held that, when a mortgagor had failed to pay his 1930 taxes, the right to sell under a deed of trust was not af-

fected by a new statute releasing interest and penalties on delinquent taxes, as the mortgagee had paid the delinquent taxes in full prior to the date the law went into effect. In *Islais Co. v. Matheson,* 3 Cal. (2d) 657, 45 Pac. (2d) 326, the California supreme court held void a law which attempted to cut down the interest on tax assessments to pay bonds. See, also, opinion by Justice Cardozo in *Worthen Co. v. Kavanaugh,* 295 U. S. 56.

The legislature of Minnesota went further than any other state in adopting chapter 414, Laws 1933, which provided that county treasurers of the state were authorized to accept a net amount equal to three-fifths of the face amount of certain delinquent taxes, without interest or penalties. In *State v. Luecke,* 194 Minn. 246, 260 N. W. 206, it was held that such statute, permitting complete satisfaction of delinquent taxes by payment of but a fraction of the face amount originally assessed, violates the constitutional provision requiring uniform taxation.

And, lastly, in 1935 the Florida legislature enacted a law creating a delinquent tax adjustment board in each county to examine into the financial situation of each individual taxpayer, and then to compromise and adjust and fix the amount that should be paid by each landowner for the redemption of tax sale certificates outstanding against his particular piece of land. In *Richey v. Wells,* 166 So. (Fla.) 817, the Florida supreme court held this law to be absolutely unconstitutional which allowed a tax adjustment board in each county at its discretion to remit taxes, or a part thereof, which had been duly levied and assessed.

In the main opinion in the case at bar, this act is held void on the ground that it violates that part of section 4, art. VIII of our Constitution, which reads: "Nor shall commutation for such taxes be authorized in any form whatever." The opinion defines the word "commutation" in the terms given in 12 C. J. 215, and includes therein the clause, "a substitution of one sort of payment for another," which clause appears to be taken from *Woodrough v. Douglas County,* 71 Neb. 354, 97 N. W. 1092, in which this sec-

tion of our Constitution was discussed. In 1903 the legislature enacted chapter 75, which is now entitled "Delinquent Real Estate Taxes," and is found in sections 77-2101 to 77-2147, Comp. St. 1929, and has been styled Scavenger Tax Act to clean up hopelessly delinquent taxes.

Joseph W. Woodrough, now judge of the United States circuit court of appeals, brought this action to test the validity of the sale of property for just what it will bring in the foreclosure of a tax lien. It was claimed that this method of getting rid of these delinquent taxes was a commutation of taxes and violated section 4, art. VIII of the Constitution, but this court said: "The sale of land to satisfy a tax lien thereon is an extinguishment of the lien, which becomes merged in the title thus conveyed. Therefore it is not a release or commutation."

It was held that wiping out all the delinquent taxes for a mere pittance was not commutation of the tax, yet this case is now quoted as an authority that letting taxpayers pay their full tax over a period of years is invalid as a commutation.

The county of Fillmore urges an objection that if the law is not found to be invalid they will lose the money shown by their tax certificates. "The lien of taxes regularly levied on real estate is, ordinarily, perpetual and can be divested only by payment or in some manner authorized by statute. * * * When the county or governmental subdivision acquires a tax sale certificate no money is paid. It is simply a means to enforce the payment of the lien of taxes. If the statutory period passes without the county or irrigation district taking any steps to enforce the lien, the lien itself is not lost, because no payment of the lien has been made. In order to enforce the lien a repurchase of the taxes must be made for the years covered by the prior purchase. *Valley County v. Milford,* 70 Neb. 313; *Logan County v. Carnahan,* 66 Neb. 685, 693; Comp. St. 1922, sec. 2877." *Flansburg v. Shumway,* 117 Neb. 125, 219 N. W. 956.

To declare a needed law void on a peculiar definition of

the word "commutation" is rather a close decision, for in the best dictionary in the state library, the Oxford Dictionary, we find the first four definitions of commutation, stated briefly, are as follows: (1) The action or process of changing or altering; (2) the exchanging of one thing for another, exchange, barter; (3) the putting of one thing instead of another, substitution or interchange; (4) the substitution of one kind of payment for another; of a money payment instead of the performance of some obligation; of a single payment instead of a number of successive payments. In Black's Law Dictionary it is defined as the payment of a designated lump sum, permanent or annual, for the privilege of exemption from taxes, or the settlement in advance of a specific sum in lieu of an ad valorem tax.

To the writer of this dissent the question arises: Is this court justified in picking out one particular line or clause from many conflicting definitions of the word "commutation" and on that line alone declare an act of the legislature void? If one definition is to be chosen over another, why not take the one from Black's Law Dictionary? "Of two constructions, either of which is warranted by the words of the amendment of a public act, that is to be preferred which best harmonizes the amendment with the general tenor and spirit of the act amended." 2 Lewis' Sutherland, Statutory Construction (2d ed.) 913, sec. 489.

In the main opinion in the case at bar, it is stated that this law violates section 18, art. III of the Constitution, because it grants to an individual special immunity and is class legislation. With this statement I beg to disagree. Taxpayers divide themselves into several classes by their own acts. One class paid up its taxes before they were delinquent. Of the others who let their taxes become delinquent, a few find that private bidders have bought a tax certificate on their property, and the county, state, school district, and other subdivisions have each received their money in full, and are no longer interested in the tax. Some delinquent taxes are on paving, sewer, or other special

assessments, but to no one of the above taxpayers does this new law apply. But the legislature found millions of dollars of delinquent taxes outstanding in Nebraska, some of which in a few counties had been written in tax certificates to the county, although no money had been paid. To all of this last class of taxpayers, amounting to thousands, in every county in the state, the legislature followed the plan approved in other states, of throwing off interest, penalty, and costs if they would pay up their delinquent taxes, and in the main opinion no fault appears to be found with this part of the law, but the law goes further, and provides that, if the delinquent taxpayer cannot pay up all of it in cash, he may pay it in certain payments.

It is argued that such a law discriminates between citizens, but Justice Roberts said: "The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it." This he said in deciding the chain store tax law case of *State Board of Tax Commissioners of Indiana v. Jackson,* 283 U. S. 527.

In 6 R. C. L. 97, sec. 98, it is stated that all the presumptions are in favor of the constitutionality of a statute, and if there is doubt it must be decided in favor of its validity, for each intendment is in favor of its constitutionality unless the contrary is made to appear beyond a reasonable doubt, and such invalidity must be made to appear clearly and plainly. Again, in section 100, the court should not conjure up theories to overturn and overthrow the solemn declarations of the legislature; and, again, in section 107: "The propriety, wisdom and expediency of legislation is exclusively a legislative question, and courts will not declare a statute invalid because in their judgment it may be unwise or detrimental to the best interests of a state." The only question for courts to decide is one of power, and not of expediency, and statutes will not be declared void simply because in the opinion of the court they are unwise.

Cooley's Constitutional Limitations (6th ed.) ch. 7, dis-

cusses the circumstances under which a legislative enactment may be declared unconstitutional.

Courts will never "declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt."

"Before proceeding to annul, by judicial sentence, what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any reasonable intendment or allowable presumption."

In examining the law as to rules of classifications, it is stated in 1 Lewis' Sutherland, Statutory Construction (2d ed.) 398, sec. 215, that, if the law relates to a subject of a general nature, and is general and uniform in its operation upon every person who is brought within the relation and circumstances provided for by it, such law is valid.

"A law, framed in general terms, restricted to no locality, and operating equally upon all of a group of objects, which * * * are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law," even though there happens to be but one individual of that class in the state. *State v. Parsons*, 40 N. J. Law, 123. See, also, *Atchison, T. & S. F. R. Co. v. Matthews*, 174 U. S. 96.

Justice Holmes said, in a dissent in a tax case, that we should avoid with great caution attempts to substitute our judgment for that of the body whose business it is in the first place to deal with questions of domestic policy that are fairly open to debate. *Schlesinger v. Wisconsin*, 270 U. S. 230.

As stated by Justice Cardozo in the case of *Fox v. Standard Oil Co.*, 294 U. S. 87, 79 L. Ed. 780: "The tax now assailed may have its roots in an erroneous conception of the ills of the body politic or of the efficacy of such a measure to bring about a cure. We have no thought in anything we have written to declare it expedient or even just, or for that matter to declare the contrary. We deal with power only."

That a statute discriminates in favor of a certain class does not make it arbitrary if the discrimination is founded upon a reasonable distinction.

And, furthermore, it is settled, as Justice Brandeis said in *Royster Guano Co. v. Virginia,* 253 U. S. 412: "That mere inequalities or exemptions in state taxation are not forbidden by the equal protection clause of the Fourteenth Amendment; that the power of the state to make any reasonable classification of property, occupations, persons, or corporations for purposes of taxation is not abridged thereby."

In the case of *Rosenbloom v. State,* 64 Neb. 342, 89 N. W. 1053, Chief Justice Sullivan quoted with approval the following language from the case of *Seabolt v. Commissioners of Northumberland County,* 187 Pa. St. 318: "Classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones, used for the purpose of evading the constitutional prohibition."

To show that taxes may be unjust, it is known by all that income taxes do not strike all persons alike. In *Brushaber v. Union P. R. Co.,* 240 U. S. 1, 60 L. Ed. 493, Chief Justice White delivered an opinion relating to the enforcement of the Sixteenth Amendment, providing for income taxes, and held that, while the statute was enacted October 3, 1913, it was not illegal to apply the tax to income received as early as May 1 of that year, and that this retroactive feature of it did not make it unconstitutional. The court also held that the exception, that the income tax law should not apply to labor, agricultural, or horticultural organizations, nor to mutual savings banks, was valid. The terms of the Sixteenth Amendment authorized a tax on incomes from whatever source derived, and by implication excluded the power to make any exemptions, but it was held in the opinion that the power to exclude from taxation some income of designated persons and classes, and to exempt entirely certain enumerated organizations and corporations,

was not forbidden to congress by the provisions of the United States Constitution.

With a due regard and consideration for the opinions of the other members of this court, and after a somewhat careful study of the authorities, this law is in my opinion a valid act of the legislature.