### In re HEFNER.
### No. 33241.

District Court, E. D. New York.

May 26, 1938.

Charles Greenwald, of New York City, for bankrupt.

Henry W. Parker, of New York City, for objecting creditor Morris Plan Industrial Bank of New York.

BYERS, District Judge.

The Court is required to decide upon these cross motions, whether the referee is correct in recommending that a discharge be granted.

The bankrupt is an unmarried woman, who represented herself to be the wife of one James Wilson with whom she apparently was living at the time that he procured a loan from the objecting creditor.

It is clear that she knew the representation to be false, and that she executed an application for the loan and the note as co-maker.

The question is important because of the reliance of the lender upon the earnings of both Wilson and the bankrupt in deciding to extend the credit, upon the theory that their salaries constituted a joint fund out of which the loan would be paid, and that, as this sum amounted to $125.00 per week, it was adequate to enable Wilson to pay $65.00 per month rent, and his other expenses, and still have enough money to liquidate the loan. The testimony will be quoted.

The first specification is that the bankrupt "made to the said objecting creditor a materially false statement in writing respecting her financial condition by means of which money was obtained on credit or an extension or renewal of credit was obtained".

This is substantially in the form of the statute. Bankr.Act § 14, subd. (b), 11 U.S.C.A. § 32(b).

The filing of an exception to the foregoing resulted in the making of an order sustaining the specification as to form, but that ruling of course did not touch the question of sufficiency under the proofs.

The referee is of the opinion that the misrepresentation was not with respect to her "financial condition" but as to her marital status, and that it therefore did not affect her right to a discharge.

The testimony of the lending agent is as follows:

"The Referee: We have a right to ask him what he relied upon. I will take it.

."Mr. Weinstein: Exception.

"The Witness: Considering this application for a loan, if I had this applicant, James Wilson, come to the bank for a loan of $984 and he indicated to us that his salary was $65 a week, as he does on here, and that he is married, that he pays a rental of $65 a month, my credit opinion would be that a loan of $984 would be too burdensome for him to handle on an income of $65 a week. If he had applied for a smaller amount or an amount I thought was in proportion to that income perhaps I would have considered it. Coming in for $984 I would have felt it was disproportionate to his income and I would not have approved the loan.

"By the Referee:

"Q. What else was there about it to induce you to make the loan? A. In addition to the statement of James Wilson I have the statement of Florence Hefner Wilson, his wife, who indicates that she also is employed by R. H. Macy for eleven years at an income of $60 a week which in my consideration from a credit point of view I would consider not an income of $65, but a joint income of $125 a week, out of which I would have felt that that income was adequate to pay a single rent of $65 a month and leave a sufficient margin to take care of the monthly payments of $82 on this loan."

It was natural to assume that the representations were true, and perhaps even if it had occurred to the witness to explain to the parties just what his mental operations were, thus giving the bankrupt notice that he would rely upon the asserted marital status, she would have still been entitled to her discharge upon the theory that her financial condition as revealed in the application blank was true.

After all, the reliance was had upon what would happen in the future as a result of the proclaimed status, not what the existing circumstances actually were. If the representation had been true, the bankrupt through ill-health or otherwise might have thereafter lost her employment, which would impair the ability of Wilson to repay the loan, even if the joint domicile were to continue.

It is not every untrue statement that bars discharge, but only such as the statute proscribes.

As to this aspect of the report, the recommendation is thought to be correct; the views of the referee concerning the necessity that the loan should be made to the bankrupt in order that a false financial statement be held to bar discharge are not included in this determination.

The second specification, so far as presently material, has to do with the failure of the bankrupt to schedule her property, if any, as a residuary legatee under the will of her father, admitted to probate in this county on July 19, 1935. She was a co-executor named therein.

She offered no testimony on the subject, although called as a witness. The will and proof of probate were proven by the objecting creditor, and it seems that fairness would require some showing on this subject. It is true that the petitioning creditor would have to call one of the executors as his witness, and as the bankrupt has been shown to be a person who is willing to indulge in misrepresentation, it is possible that her evidence would not be favorable to the creditor's case. However, I think some inquiry should be made, if need be by the referee himself, and that the opportunity should be given to the objecting creditor to offer whatever evidence he may be able to bring to light on the subject. Perhaps the records of the Surrogate's Court would be helpful.

If counsel be so advised, an order may be settled referring the application back to

the referee for further inquiry; otherwise the motion to confirm the report will be granted and the motion to overrule will be denied.

Settle order.