## The Pennsylvania Company, etc., et al., Trustees, v. Laughlin et al.

*P. Nicholson Wood,* of *Shields, Clark, Brown & McCown,* for petitioners.

SMITH, P. J., August 4, 1942.—This proceeding is concerned with a petition under the Deficiency Judgments Act of July 16, 1941, P. L. 400, 12 PS §2621, to fix the fair market value of real estate sold on execution. No answer was filed to the petition and by decree bearing date the 23rd day of March, 1942, the fair market value as of the date of the execution sale was determined and fixed at $8,000. The portion of the decree herein complained of provided as follows:

"Further ordered, adjudged and decreed that the petitioner shall, within 60 days hereafter, file in this proceeding a release effective as of the date set forth in said petition of the respondent or respondents named therein and served, from the payment of the judgment entered in this proceeding and from the debt for which the same was recovered to the extent of the fair market value as above determined and fixed, less the amount of all prior liens, costs, taxes and municipal claims not discharged by the sale plus the amount of any such items paid on distributing the proceeds thereof, amounting in all to $3,192.96, that is to say, a release for $4,807.04, being the difference between the said fair market value and the amount of said deduction, and it is

"Further ordered, adjudged and decreed that leave is granted to the petitioners, upon the filing of said release, to proceed by appropriate proceedings for the collection of the balance of the said debt and judgment."

Petitioners have filed exception to that portion of the decree providing for the filing of a release and also to the provision of the said decree requiring that such release be filed within 60 days after the entry of the decree. The questions raised by petitioners in support of the exceptions filed are:

1. Do the provisions of the Deficiency Judgments Act, and particularly section 6 thereof, mean that where no answer to the petition is filed plaintiff must file a written release in order that the debtor "shall be released and discharged" to the extent provided by the act or is such release and discharge effective ipso facto by virtue of the provisions of the act itself?

2. If the discharge is, as suggested above, effected ipso facto by virtue of the provisions of the act, should the court, of its own motion, nevertheless require plaintiff to file a written release?

3. If, for any reason plaintiff should be required to file a written release, should the court of its own

motion require such release to be filed within 60 days after the filing of the decree, or within any specified period of time short of the time when plaintiff elects to proceed for the collection of the balance of the debt?

### Discussion

The answers to the questions raised by petitioner must be found within the entire scope of the act and not merely in the section referred to by petitioner. It is for this purpose that we shall consider the various provisions, bearing in mind the history of similar legislation in this and other jurisdictions. See Commonwealth of Pennsylvania Legislative Journal, 1941, vol. III, p. 3433, and the declared purpose to be accomplished thereby as set forth in the preamble: "To protect the debtors, obligors or guarantors of debts for which judgments are entered or may be entered. . . ."

The statute provides that whenever any real property has been sold in execution proceedings and the price realized from the said sale is not sufficient to satisfy the amount of the judgment, interest and costs, ". . . and the plaintiff seeks to collect the balance due . . ." (section 1), he shall thereupon petition the court having jurisdiction to fix the fair market value of the property. A subsequent provision of the act (section 7), limiting the time for the filing of a petition for the determination of the fair value to ". . . not later than six months after the sale of any real property . . ." taken together with the purpose of the statute, as set forth in the preamble, above quoted, would indicate preliminarily that a prompt effort to realize the unpaid balance due the creditor was contemplated by the statute.

After provision made in the statute (sections 2, 3, 4, 5) as to the manner of service, the persons upon whom service must be made, and the time for the hearing on the petition, which matters do not now concern us, section 6 sets up the following procedure (the numbering of the paragraphs is ours):

1. "If no answer is filed . . . or if an answer is filed which does not controvert the allegation of the fair market value of the property as averred in the petition, the court shall determine and fix . . . the amount thereof alleged in the petition to be the fair market value."

2. "If an answer is filed controverting the averment in the petition . . . but no testimony is produced at the hearing supporting such denial of the fair market value, the court shall determine and fix . . . the amount thereof alleged in the petition . . . thereupon enter a decree directing the petitioner to file release of the debtors . . . to the extent of the fair value so fixed, whereupon execution may be issued for the balance of the debt."

3. "If answer is filed alleging as the fair market value an amount in excess of . . . [that] . . . averred in the petition, the plaintiff . . . may agree to accept . . . the value set up in the answer and in such case may file a stipulation releasing the debtors. . . ."

4. "If an answer shall be filed and testimony produced setting forth that the fair market value of the property is more than the value stated in the petition, the court shall determine and fix the fair market value of the property which shall in no event exceed the amount of the debt, interest, costs, taxes and municipal claims."

At this point two items in the language of the sections above quoted merit attention: First, that in situation no. 2, petitioner is directed "to file release" and in situation no. 3 plaintiff "may" (which we believe must be construed to mean "shall") file a stipulation releasing the debtor; secondly, that only in situation no. 2 does the statute specifically provide that execution may be issued for the balance of the debt. Were we to be limited, in each of the fact situations which may arise, to the paragraph setting forth the procedure to be applied to the specific situation, then

only where an answer has been filed controverting the value averred in the petition and no testimony is produced in support thereof could execution issue for the balance of the debt. Such a conclusion is patently absurd.

The omissions and intention of the statute must be gathered from the last paragraph of section 6 which covers all of the preceding fact situations. Here it is provided:

"After the hearing and the determination by the court . . . the debtor . . . *shall be released and discharged* of such liability to the plaintiff to the extent of the fair market value of said property as previously agreed to by the plaintiff or plaintiffs or determined by the court . . . and thereupon petitioner may proceed by appropriate proceedings to collect the balance of the debt."

Obviously, therefore, it was intended that process should be available for execution to collect the balance of the debt in all of the four situations. Conversely, this blanket provision of section 6, which does not mention the two situations in which a "release" or "stipulation releasing" the debtor is required of petitioner, merely declaring that the debtor "shall be released and discharged", cannot be construed to mean that a "release" or "stipulation releasing" shall be required in *no* case at all.

It is at least suggested by the above instances of inadequate draftsmanship that the history of this act be examined. The act originated as Senate Bill No. 588 of 1941. As passed by that body it proposed a substantially different procedure: Pennsylvania Legislative Journal, 1941, vol. II, p. 1647. Thus, before any execution might issue against real property, the judgment creditor was to "file a statement in the court . . . that he or they release and discharge the debtors" or "petition the court . . . to fix the fair value of the property to be sold." The nature of the

petition, the manner of service and the effect of a failure to name or serve a debtor were as subsequently enacted into the statute under consideration.

The proposed act, Senate Bill No. 588, also defined four fact situations in which a petition had been filed:

1. No answer filed or answer filed not controverting the allegation of value. Thereupon the plaintiff was to file a stipulation releasing the debtor to the extent of the amount averred.

2. Answer filed controverting averment of value but no testimony produced. Stipulation of release to be filed, as above.

3. Answer filed and plaintiff elects to accept the value set forth in the answer. Stipulation of release to be filed, as above.

4. Answer filed controverting value and hearing thereon. Value to be determined by the court.

After the determination of value, the bill proposed that the execution issue and "upon confirmation of the sale the debtor . . . shall be released and discharged of such liability to the plaintiff to the extent of the fair market value . . . as agreed to by the plaintiff . . . or determined by the court less the. . . ." Thereupon the prothonotary was directed to calculate the credit to which the debtor was entitled and note upon the record of the judgment the amount thereof, together with the unpaid and unsatisfied balance of the judgment. The remaining features of the Senate bill are identical with those of the final enactment, with the exception of the effective area thereof.

In the last-mentioned difference between the Senate bill and the final act, as approved on July 16, 1941, supra, is to be found the reason for the variance in procedure. The procedure of the Senate bill was not intended to apply to "any obligation of contract incurred at any time before such effective date nor to any judgment which may have been heretofore re-

covered." Hence the procedure for the determination of fair value *prior* to the issuance of execution. Not so, however, in the final act, applying as it does to execution sales prior or subsequent to the effective date of the act (section 1) and limiting judgment creditors who had issued execution prior to the act to a period of six months after the effective date in which to file a petition if they seek to recover the balance due on the judgment (section 7).

The errors and omissions of draftsmanship thus become highlighted. Portions of the proposed act, contemplating an entirely different procedure, were inserted bodily into the final draft. This is most graphically illustrated by section 8 of the Act of July 16, 1941:

"Section 8. Nothing in this act shall be construed to affect present procedure for the public sale of real estate or the private sale thereof under order of court, except to the extent herein expressly provided or necessary for the purpose of giving proper effect to the provisions hereof."

Since no suggestion is made in any portion of the act for a change of "present procedure for the public sale of real estate" the section is meaningless. It only acquires meaning when one reads Senate bill 588 and finds identical language in section 8 thereof, the difference being, however, that in the Senate bill there was a very substantial change of "the procedure for the public sale of real estate."

Returning from this legislative history to a consideration of the particular problem raised by the decree in this matter, it is suggested that since the filing of a release is specifically provided for only in two situations, and not at all in the situation, as here, where no answer was filed to the petition to fix the fair value, the decree as entered was improper.

Reading the provisions of the last paragraph of section 6 as being applicable to all of the fact situations,

as we have suggested above, the determination of this question must be resolved in terms of the meaning of the words therein used, "shall be released and discharged." A proper interpretation of these words, however, is clouded by the language of section 9, wherein it is said:

". . . nothing in this act shall be construed to effect a release or discharge of any person otherwise than . . . as herein expressly provided."

Does this section limit the power of the court to require the filing of a release only to the two fact situations wherein it is so specifically provided, or does the language refer to the general provision of the last paragraph of section 6 and call for an interpretation of the words "shall be released and discharged"? Here, too, we are faced with the incongruity resulting from legislative "borrowing" from a proposed bill, providing a completely different system, to the bill finally enacted. This section is identical with the corresponding section 9 of Senate Bill No. 588. In that bill the provision had meaning, referring as it did, to the device of effecting a release or discharge through a release filed and an appropriate entry by the prothonotary. In the bill as enacted, however, it must be construed to refer, if at all, to the words "shall be released and discharged", and it is to an interpretation of this phrase that we must return.

Considering the phrase, first out of the context of the statute, we find that the word "discharge" is defined in A. L. I. Restatement of Contracts, sec. 122 (comment b) p. 143, as "a general word covering all methods by which a legal duty is extinguished." In Rivers v. Blom, 163 Mo. 442 (1901), the court, p. 446, defines "discharge" as meaning "to send away, as a creditor, by payment. To set free . . . absolve or acquit, as of an obligation, claim, accusation, or service due; to exonerate; to relieve; to clear." Similar lan-

guage is used in Commonwealth v. Benson et al., 94 Pa. Superior Ct. 10, 15 (1928). Hence, while "discharge" may describe the effect, the operative word in the phrase is "release".

In Baker, exec., v. Baker, 28 N. J. L. 13, 20 (1859), the court said: "A release is a discharge of a debt by act of the party; an extinguishment is a discharge by operation of law." To the same effect see Woodrough v. Douglas County et al., 71 Neb. 354 (1904), and Coopey v. Keady, 73 Ore. 66 (1914). See also Swain v. McMillan, 30 Mont. 433 (1904), where the court, p. 440, defined "release" as "a surrender of a right; a remission of a claim in such form as to estop the grantor from asserting it again. An instrument by which a creditor or lienor discharges the debt or lien, or frees a particular person or property therefrom." And in Union of Soviet Socialist Republics v. The National City Bank of N. Y., 257 App. Div. 302, the court declared that the proper interpretation of the word "release" is that a claim has been extinguished by a release running to the debtor; not a claim barred by operation of law.

Hence, on the basis of the literal and accepted meaning of the phrase "released and discharged", calling as it does for some act of the party, rather than the operation of law, the decree requiring the petitioner to file a release was proper. This conclusion is especially persuasive when we return to the context and the history of the act.

In the Senate bill, as was noted above, either the release was to be filed with the court prior to execution or a petition filed to fix the fair value and, in three of the four situations arising thereafter, the proposed act provided for the filing of a stipulation of release. Despite this, in a paragraph of section 6 thereof, substantially similar to the concluding paragraph of section 6 of the act herein construed, the

Senate bill proposed that "the debt shall be released and discharged" and provision was made for the implementation of the release and discharge by appropriate entry on the record of the judgment by the prothonotary. Obviously, therefore, in the proposed act, the language of release and discharge referred to the document of release to be submitted by petitioner and not to the accomplishment of that result by operation of law.

In the act now being construed, in only two situations did the legislature specify the filing of a release, neither situation being herein involved. However, just as the right to issue execution in all situations is saved by the general language of the last paragraph of section 6, so too is the duty to file a release in all cases imposed by the general language of the section. This result we reach because of the meaning of the words as well as from the obvious intendment of the legislature.

At this point we might return to the declared purpose of the act as set forth in the preamble: "To protect the debtors . . ."; bearing in mind also section 10, which renders it incompetent for any debtor to release any obligee from compliance with the provisions or to waive the benefits of the statute. Cognizant of the evil sought to be averted, it is our conviction that the benefit of the act would be lost unless the court, through such an interpretation, set the framework whereby the benefit may be made real to the judgment debtor. It is apparent that provision should be made, by rule of court or otherwise, not only to decree the filing of a release as we have done, but also to have the judgment index marked appropriately, as was suggested when the act was proposed. For, if nothing further will be done in the situation now before us, the judgment index in Philadelphia County will continue to hold out to the world a continuing liability on the part of the judgment debtor to the

full value of the judgment as it appears on that record. While no execution could issue against him in an amount in excess of the difference between the fair value as fixed by the court and the amount of the judgment and costs, the benefit of the statute would be one which the debtor might be compelled to set up by way of an affirmative defense to any execution process and, as to the rest of the world, the original liability would, prima facie, be continued.

In terms of the credit of a debtor, and to avoid any question of fraudulent assignment of judgments for value or· other complications which would limit or reduce the relief of the debtor contemplated by the statute, we are of the opinion, therefore, that a rule of court to cover the various situations which may arise under the act would be timely.

For our limited purposes, however, we have ruled by decree that the judgment creditor shall file a release. To require it so to do is not to ask the surrender of any legal right or to diminish the amount of the claim. It is only to make more complete the relief of the debtor by a clear manifestation upon the record that the debt has been reduced by the value of the security held by the creditor, less allowable deductions therefrom.

Aside from the fact, as indicated above, that such a requirement is dictated by the language and intention of the statute, if it were but the exercise of the judicial rule-making power it is amply warranted by precedents of the courts of this Commonwealth and other jurisdictions. It has always been recognized that a court of record has an inherent power to make rules for the transaction of its business. Such power exists independently of any legislative grant. The various statutory enactments, from time to time, providing that courts are possessed of such power, have not introduced any new principles or granted any new power; being declaratory merely of that which they have immemorially exercised. The only limitation of such

power is that the rules must not be contrary to law or unreasonable in their application: Equipment Corporation of America v. Primos Vanadium Co., 285 Pa. 432 (1926). True, where a specific mode of procedure or practice is prescribed by statute our courts have recognized that a different mode set up by rule of court is void: Smith v. Wertheimer et al., 76 Pa. Superior Ct. 210 (1921) ; although in the profound or theoretical sense one might question the propriety of such an invasion by the legislature into the peculiar field of judicial function: 110 A. L. R. 22 (1937). Frequently our courts, in the interest of a proper disposition of matters, to facilitate their business, and to promote substantial justice, have implemented statutory enactments by their own rules: Timney v. Timney, 21 Pa. Superior Ct. 538 (1902). See also Snyder et al. v. Bauchman et al., 8 S. & R. 336 (1822), Harres v. The Commonwealth, 35 Pa. 416 (1860), Russell et al. v. Archer, 76 Pa. 473 (1874), Lehman et al. v. Howley, 95 Pa. 295 (1880), Horner v. Horner, 145 Pa. 258 (1891), and Carroll et ux. v. Quaker City Cabs, Inc., et al., 308 Pa. 345 (1932).

The exercise of this power has never been limited to the mechanical conduct of the business of the court in the restricted sense but rather has been expanded to include such provisions and requirements as will facilitate a complete disposition of matters pending before the court. Thus in Russell et al. v. Archer, supra, a rule of court required that, where an affidavit of defense does not controvert the whole of a plaintiff's claim but only a part thereof, plaintiff may take judgment for such part of the claim thus fixed to be due. In approving this rule the court declared (p. 476) :

"We see nothing in this rule of court calculated to work injustice. It is designed to expedite the proceedings. . . ."

It has been urged herein that the requirement of the decree that petitioner file a release compels it to do something not called for specifically by the statute. We believe, as indicated above, that this is erroneous. Even if it were as petitioner suggests, we may answer by quoting from the opinion of the court in Standard Underground Cable Co. v. Johnstown Telephone Co., 26 Pa. Superior Ct. 432 (1904) (p. 436):

"A rule which would require the plaintiff to do something . . . which the legislature manifestly intended should not be required of him, or would leave him at liberty to omit something which the legislature has required, would be in contravention of law and void. The rule construed in Marlin v. Waters, 127 Pa. 177, belonged to the latter class, because it gave the plaintiff a right to judgment without serving upon the defendant a copy of the statement, or giving him notice that it had been filed. The rule before us dispenses with nothing which the act of 1887 requires; if it is invalid it is because it relates to a matter which the legislature intended to place beyond the power of the courts to regulate. But it is reasonable to suppose that the legislature, in requiring notice to be given, but without declaring whether it shall be oral or written, or prescribing its form or the mode of service, had in view the power of the courts, immemorially exercised, to make reasonable rules regulating such matters."

To the same effect see Cunnius v. Reading School District, 206 Pa. 469 (1903), and Laverelle's Estate, 101 Pa. Superior Ct. 448 (1931). In the last-mentioned case, as here, the criticism was made that in the absense of an adverse party the court should not take it upon its own motion to do a thing not asked of it. Here, as was there said, we may answer that the decree entered "is but a fulfillment of the lawmaker's intent" and having the matter before us we may enter such decree as law and equity require. Petitioner, having brought itself within our jurisdiction in the desire

of preserving the limited right allowed it under the statute, is subject to our control for the complete disposition of the rights of the parties in interest.

Finally it has been urged that if plaintiff shall be required to file a written release no time should be specified, short of the time when plaintiff elects to proceed for the collection of the balance. The propriety of the requirement that the release be filed within 60 days we believe is justified as a reasonable exercise of the rule-making power of the court (see cases cited, supra) and as contemplated by the act itself.

Section 1 provides:

"Whenever any real property . . . is . . . sold . . . and the plaintiff seeks to collect the balance due . . . [he] . . . shall petition the court . . . to fix the fair . . . value . . ."

Giving obvious meaning to this section, he who would place himself in position to collect the balance due shall petition the court, etc. The filing of his petition is notice by the creditor to all parties in interest that he intends to proceed for the balance—this is the core of his action. The fixing of the fair value is but one of the means to that end. Further, the statutory limitation of the filing of the petition to six months indicates the intent to afford a speedy relief of the debtor. The argument that by the 60-day time limitation for the filing of the release the creditor is compelled to proceed to collect the balance within that time is not convincing. It does not necessarily follow that execution must necessarily issue immediately within the 60 days or at the filing of the release. It is obvious that when the release is filed in season execution may issue any time thereafter. The suggestion that the filing of a release will bar petitioner's rights in the event any portion of the statute be held invalid is likewise without merit under the facts of this case.

*Order*

And now, to wit, August 4, 1942, the exceptions are dismissed and the motion to vacate part of the decree is denied.