JOSEPH W. WOODROUGH V. DOUGLAS COUNTY ET AL.

FILED MARCH 17, 1904. No. 13,594.

1. **Taxation.** CONSTITUTIONAL LAW. The sale of real estate for the payment of delinquent taxes, under the provisions of chapter 75 of the laws of 1903, entitled "An act to enforce the payment and collection of delinquent taxes and special assessments on real property," does not deprive the owner of his property without due process of law.

2. **Tax Sale:** COUNTY AS PURCHASER. Lands purchased by the county, under the provisions of this act, are held in trust for itself, the state, and all other political subdivisions entitled to any portion of such delinquent taxes. Such lands are not acquired by the state by escheat or forfeiture, and do not belong to the permanent school fund.

3. **Constitutional Law:** JURY. The proceeding provided for by this act is a suit in equity in the district court, and the owner of real estate in question therein, has no constitutional right to a jury trial.

4. ———: RELEASE OF TAXES. The sale of lands in such proceedings for what they will bring, though less than the amount of the decree for the taxes due and delinquent, is not a release or commutation of taxes, within the meaning of section 4, article IX of the constitution.

5. ———: STATUTES. The act is not vulnerable to the objection that its provisions are broader than its title; it is complete in itself, capable of enforcement, and is not open to the objection that it is amendatory of other laws.

6. ———: DELEGATION OF LEGISLATIVE AUTHORITY. The law provides for one of two methods of collecting delinquent taxes on real estate, and permits the county board to choose which method it will

pursue. This does not amount to a delegation of legislative authority.

7. **Cumulative Remedy.** The remedy provided for is declared by the act itself to be cumulative, and therefore it is not in conflict with, nor does it take away any other remedy provided by statute.

8. **Act Constitutional.** *Held,* That the act in question is not in conflict with any of the provisions of the constitution so as to invalidate it, and is a constitutional exercise of legislative power.

ORIGINAL action by Joseph W. Woodrough against Douglas county and others. *Dismissed.*

*Joseph W. Woodrough, pro se.*

*Carl C. Wright, James E. English* and *W. T. Nelson, contra.*

BARNES, J.

The plaintiff commenced this action against the county of Douglas, its board of commissioners, the treasurer of said county, and the city of Omaha, to restrain the officers of the county and city from taking the proper and necessary steps to enforce the payment and collection of the delinquent taxes and special assessments on real property, in said county and city, under the provisions of chapter 75 of the laws of 1903. The defendants have filed separate demurrers to the plaintiff's petition. No objection is raised to our jurisdiction to entertain this suit, and it is conceded that the pleadings are sufficient in form and substance to test the validity and constitutionality of the law. The act contains 48 sections, and on acount of its considerable length can not be quoted in full. Its provisions will be referred to in detail as occasion may require. Its objects, briefly stated, are: To clear the tax list of dead properties overburdened with taxes; to do this in such a way as to secure to the state, county and city all that the property will bring at a judicial sale made under the most favorable conditions; to litigate the questions involved as to the validity of the taxes and special assesments before instead of after the sale; to eliminate unnecessary items of cost, and allow the court

proceedings to be carried on at a trifling expense; and to secure to the purchaser at the sale a new and independent title to the real estate in question. Section 5 of the act provides, in substance, that the county treasurer shall prepare a petition addressed to the district court of his county, which shall be entitled "The state of Nebraska, plaintiff, against the several parcels of land therein described and all persons and corporations having or claiming any right, title or interest therein, defendants." It also prescribes the allegations which the petition shall contain, together with the prayer for judgment. Section 6 provides that the petition shall be filed with the clerk of the district court in the county where the lands are located, and the cause shall be docketed as a suit in equity; that the filing of the petition shall operate as the commencement of a several action against each parcel of real estate described in the petition, as well as the party having or claiming any interest, right, title or claim in or to such real estate, or any part thereof. Section 7 provides for service, by the publication of a notice of the commencement of the action, directed to all whom it may concern; the notice is required to be signed by the county treasurer, and must be published once a week for four successive weeks in some newspaper of general circulation in the county in which the lands are situated; and if no such newspaper shall be published in the county, then in some newspaper of general circulation within the judicial district. It is further provided that a complete list of the lands and lots described in the petition, together with the name of the owner of each particular tract, as shown by the county assessment roll of the preceding year, as well as a statement of the total amount of the taxes and assessments, and interest thereon to October 1 of that year, shall be published in connection with the notice. And section 8 of the law provides for the proper proof of such service by publication. The act does not require personal service of summons as provided for in our code, and for this reason the plaintiff's first contention is that the law

is in conflict with section 3, article I of the constitution, because, by its enforcement, persons will be deprived of their property without due process of law. It appears that every step necessary to give the court jurisdiction, excepting personal service of summons on the owner or owners of the lands to be affected by the decree, is provided for, and it only remains for us to determine whether the omission to provide for such service of summons renders the law unconstitutional.

The act in question was copied from the laws of the state of Minnesota, where it has been in force for many years, and where it has been uniformly held that the proceeding was an action *in rem*, and that the jurisdiction of the court over the land is not affected by the failure to provide for and obtain personal service of summons upon the owner. *McQuade v. Jaffray*, 47 Minn. 326. In the opinion in that case the court said:

"Under our statute proceedings to enforce the collection of real estate taxes are purely *in rem*. They are against the land, and not against the owner. The notice is addressed, not to the persons named in the list as owners, but to all persons who have or claim any interest in any of the tracts described in the list; and they are notified that, in case of default, judgment will be entered, not against them personally, but against such pieces or parcels of land. The judgment is against the land, and the name of the owner is not required to appear at all. It is elementary that no reference to the name of the owner is necessary in proceedings *in rem*. It is, however, a common practice in such proceedings to give the name of the owner, if known, 'for frankness' sake,' to increase the chances of his attention being called to the notice."

In *Pritchard v. Madren*, 24 Kan. 486, this identical question was before the court. The validity of a like law was challenged on the ground that the proceedings under it did not constitute due process of law, and the court said:

"While the ordinary process for the collection of taxes

is by sale by the treasurer, this statute authorizes the county, in case of failure to collect by the ordinary process, to foreclose the tax lien by proceedings in the district court. Is not this due process of law? Is there any constitutional requirement or inherent necessity compelling the collection of taxes by the single process of sale by county officers? Clearly not. The method of collection is not prescribed in the constitution, but is left to the legislative discretion; and because one method has hitherto been adopted, is no limitation on the power to adopt another. There is no inherent vice in collecting taxes by judicial proceedings in the courts, instead of by summary process of sale by county officials. The legislature may adopt either, or both. A collection in either way is by due process of law. A tax, when duly levied, becomes a lien upon the land, which may be enforced in such manner as the legislature shall prescribe. The mere remedy is always within legislative control. A change in it disturbs no vested rights. Again, objection is made to the proceedings in this case and the judgment rendered, on the ground principally that neither the land nor the owner was named in the title of the petition, that in the body of the petition and the judgment the land is alleged and found to be the property of another than the real owner, and also because while the owner was a resident the only notice given was by publication. Neither of these grounds of objection is well taken. The collection of taxes is a proceeding *in rem*. The land and delinquent taxes are correctly described in the body of the petition and in the publication notice. * * * If the petition fully and clearly states all the facts constituting a cause of action against this particular tract of land, facts sufficient to justify a decree of foreclosure against it, and due and legal service of all process or notice required is made, the jurisdiction of the court is complete," and it can not be said that the property is taken without due process of law.

We held in an early case that, in a proceeding *in rem*, it

was not necessary to bring the party, whose rights were affected, before the tribunal competent to pass upon the subject matter, by service of a summons. *South Platte Land Co. v. Buffalo County,* 7 Neb. 253. We have also held that a proceeding to foreclose a tax lien, by a purchaser at an ordinary tax sale, was against the land, and the owner and others having a lien upon the land need not be made parties to the suit, where it is alleged in the petition that the owners are unknown; that the purchaser at the foreclosure sale, in such a case, takes the land by a new and independent title, and that such proceedings are not open to the objection that the property of the citizen is taken without due process of law. *Leigh v. Green,* 64 Neb. 533. See also *Butler v. Copp,* 5 Neb. (Unof.) 161. The case of *Leigh v. Green, supra,* was taken to the supreme court of the United States, and affirmed by that tribunal on the 22d day of February, 1904. So it may be said that it is now well settled that a proceeding to foreclose a lien for taxes, brought by state or county officials, is a proceeding *in rem* to secure a judgment against the lands assessed, and the notice by publication to all parties interested to appear, is sufficient to confer jurisdiction over resident and nonresident landowners, without personal service of summons. *Winona & St. Peter Land Co. v. Minnesota,* 159 U. S. 526, 537; *Ball v. Ridge Copper Co.,* 118 Mich. 7; *Chauncey v. Wass,* 35 Minn. 1; *Bond v. Hiestand,* 20 La. Ann. 139; *Emmons County v. Thompson,* 9 N. Dak. 598. In *Winona & St. Peter Land Co. v. Minnesota, supra,* Justice Brewer, speaking for the supreme court of the United States, said:

"That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribes the court in which and the time at which the various steps in the collection proceeding shall be taken, notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law."

We therefore hold that the act is not vulnerable to this **objection.**

Plaintiff contends that the lands purchased by the county at the foreclosure sale are made the property of the state; that they are obtained by escheat or forfeiture and therefore belong to the permanent school fund; that the law requiring the funds arising from the redemption or resale of the lands to be distributed to the state, county and municipality, is in conflict with the constitution, and the whole act must be declared void. Lands purchased at a foreclosure sale are not acquired by escheat or forfeiture, in the sense used in the constitution. The words "escheat" and "forfeiture" have a distinct and definite legal meaning, and can never be construed to mean sale and purchase. By the terms of the act, the county is authorized to purchase the land the second time it is offered for sale, for the sole purpose of enabling it to collect the delinquent taxes. Ample provisions are made for the resale of the lands purchased by the county at a premium, and for redemption; the amount realized by the sale or redemption is to be applied to the payment of the taxes, and prorated in the manner specified in the act. The plaintiff states no reason and cites no authority in support of his contention; apparently he does not rely upon it; and we therefore hold that it is without merit.

Plaintiff further contends that the law is unconstitutional because the act makes no provision for a trial by jury. It will be observed that, by the terms of the law itself, the action by the county to foreclose the tax lien is declared to be a suit in equity. There never was, and there is not now, any constitutional or statutory right of a jury trial in an equitable action. *Sharmer v. McIntosh,* 43 Neb. 509; *Dohle v. Omaha Foundry & Machine Co.,* 15 Neb. 436; *Mayer v. State,* 52 Neb. 764.

Again, it is difficult to see how, in an action for the foreclosure of a tax lien, any disputed question of fact triable by a jury can arise. All of the proceedings relating to the levy and assessment of the taxes are matters of public record, about which there can be no dispute, and the court is simply required to pass upon the sufficiency of

these proceedings as a matter of law. Wherever this question has been raised it has been held, that acts providing for a summary foreclosure of taxes by state or county authorities are valid, although the title and right of possession to lands is determined without affording a trial by jury. *Ball v. Ridge Copper Co., supra; State Tax-Law cases,* 54 Mich. 350, 367.

It is next claimed that the act authorizes a release or commutation of taxes, and is in conflict with that section of the constitution which provides that "The legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever." Constitution, art. IX, sec. 4. The sale of land to satisfy a tax lien thereon is an extinguishment of the lien, which becomes merged in the title thus conveyed. Therefore it is not a release or commutation. A release is a discharge of a debt by act of the party; an extinguishment is a discharge by operation of law; a release is a voluntary relinquishment of a lien and right of action or an obligation. In a foreclosure the liens do not continue as incumbrances on the land, but by operation of law they are extinguished. In the proceeding to foreclose tax liens provided for in this act the liens are extinguished, and are not released either by the legislature or by the voluntary act of any public officer acting under authority from that body. Again, commutation is a passing from one state to another; an alteration, a change; the act of substituting one thing for another; a substitution of one sort of payment for another, or of a money payment in lieu of a performance of a compulsory duty or labor or of a single payment in lieu of a number of successive payments, usually at a reduced rate. The judicial sale of property under a decree of foreclosure, for what it will bring, although it be less than the amount of the

taxes assessed and delinquent against it, can not be said to be a commutation of taxes within the meaning of the constitution.

The provision of our constitution prohibiting the release or commutation of taxes was taken verbatim from section 6, article IX of the constitution of Illinois, adopted in 1870. An evil had grown up in that state which had commenced to break down the principles of uniformity and equality of taxation. Therefore the adoption of such an amendment to the constitution was necessary. After this provision was adopted the legislature of that state enacted a revenue law containing, in substance, the following provision: That whenever the county judge, county clerk and county treasurer shall certify that the taxes on forfeited land equal or exceed the actual value of said land, the same shall be offered for sale to the highest bidder, after first giving ten days' notice of the time and place of sale, together with a description of the lands sold. This section is still in force there, and has not been attacked as in conflict with that constitutional limitation. Plaintiff cites the case of *State v. Graham*, 17 Neb. 43, as sustaining his point and decisive of this question. An examination of that case discloses that it is not in point, and does not control this case. In 1881 the legislature passed an act to authorize county commissioners to purchase real estate at tax sales. The act contained the following provision for the release of taxes: "Whenever the county commissioners * * * have purchased any real estate * * * they may sell and assign the tax certificates issued upon such purchase for an amount not less than 50 per cent. of the amount expressed in such certificates." (Sec. 2, art. III, ch. 77, Compiled Statutes.) The difference in the procedure between that act and the one here in question is vital. The present act provides for a public sale to the highest bidder. The price of the certificate is fixed at the amount of taxes due without discount or commutation. The act contemplates a sale of the lands under a decree, not merely the sale and assign-

ment of tax certificates at private sale by the county board. Therefore, the decision in the case of *State v. Graham* has no application to the present act. Again, we find in the opinion in that case the following expression:

"If the property will not sell for sufficient to pay the delinquent taxes due thereon—an extreme case—it is possible the legislature may possess the power to authorize the sale for less than the taxes due."

If the land will not sell for the amount of taxes due, the most usual process of law would be to have the property sold under the judgment or decree of court to the highest bidder. This is in accordance with the usages of courts of equity in enforcing the collection of liens. It is the process resorted to in many states, and particularly in Illinois, where the constitutional limitation as to release and commutation of taxes is the same as ours. Again, to hold that real estate can not be sold, in a proceeding to foreclose a tax lien, for less than the amount of the taxes due and delinquent thereon would, in many instances, enable the owner to wholly escape taxation. It would only be necessary for him to neglect the payment of his taxes until they should amount to more than his property would sell for, and thereafter he could forever enjoy its use without contributing anything to the support of the commonwealth. Such a situation was never contemplated by the framers of the constitution. The plaintiff has failed to produce any authority which holds that such foreclosure proceeding constitutes a release or commutation of taxes within the meaning of the terms used in the constitution. And in the absence of precedent or authority, or of any well established principle of construction to demonstrate otherwise, it would seem that the act in this respect is not in conflict with the limitations of our constitution, and that its validity is free from doubt.

Plaintiff further contends that this law embraces many subjects not clearly expressed in its title; that it modifies and amends many sections of our statutes, and contains

no reference to any of them either in its title or otherwise; that for these reasons it is unconstitutional. The title of the act is: "An act to enforce the payment and collection of delinquent taxes and special assessments on real property." There can be no doubt but that this title is broad and comprehensive enough to cover every provision of the law relating to that subject. It is scarcely less comprehensive than that of the general revenue law, which has been held sufficient. Again, the law is complete in itself, and while it may seem to conflict with some other provisions of our statutes, yet it is declared by its terms to be a cumulative remedy only. It is a law special in its nature and provisions, and will prevail over general provisions of the statutes.

It is also contended that the act is void because it leaves the question of its enforcement to the arbitrary determination of the board of county commissioners, thus giving that body the power to suspend the operation of the general and other revenue laws, contrary to the provisions of section 1, article III of the constitution. There is nothing in this contention. This act, taken in connection with the general revenue law, simply provides two methods of enforcing the collection of delinquent taxes and special assessments on real property. It does not delegate legislative power to the county commissioners, but gives them the option of a cumulative remedy. The legislature has declared what the law shall be when it takes effect; also upon what contingency it shall be put in operation, and when that contingency happens it takes effect by legislative will. This does not amount to a delegation of legislative power. *State v. Sullivan,* 67 Minn. 379. The law governing the sale of intoxicating liquors in this state is prohibitory unless the county board deems it expedient to grant a license. This law, together with many others of a similar character, has been upheld by the courts, and the questions affecting the validity of such laws seem to be well settled. This identical question arose in determining the constitutionality of the irrigation act. That law

was attacked because it was claimed that it contained a delegation of legislative power to the county board. The act was upheld, and it was declared that its provisions did not amount to a delegation of legislative power. *Board of Directors of Alfalfa Irrigation District v. Collins,* 46 Neb. 411. Such a law has received the approval of the highest court in the nation. *Fallbrook Irrigation District v. Bradley,* 164 U. S. 112. The enforcement of the law in question is simply applying one of two methods of procedure to collect delinquent taxes, either of which the board is at liberty to choose. Therefore, it is not open to the constitutional objection that it is a delegation of legislative authority. *Dinsmore v. State,* 61 Neb. 418.

After a careful consideration of the whole subject, we are constrained to hold that chapter 75 of the laws of 1903 is an act complete in itself, capable of being enforced, providing for a cumulative method for the collection of delinquent taxes, which would otherwise be wholly lost to the commonwealth; that it in no manner conflicts with the provisions of our constitution so as to invalidate it, and there is no valid reason why it should not be enforced. Therefore, the several demurrers of the defendants to the plaintiff's petition are sustained, and the cause is dismissed at the plaintiff's costs.

JUDGMENT ACCORDINGLY.