76 N.J. Super. 577 (1962)
185 A.2d 218
BENEFICIAL FINANCE COMPANY OF JERSEY CITY, INC., PLAINTIFF-RESPONDENT,
v.
DORIS NORTON, ALSO KNOWN AS DORIS LaRUE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1962.
Decided October 29, 1962.
*578 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Gilbert I. Wasserman argued the cause for appellant (Mr. Theodore D. Rosenberg, attorney).
*579 Mr. Thomas J. Brady argued the cause for respondent (Mr. Joseph Keane, of counsel; Messrs. Milton, Keane & DeBona, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff's suit in the Passaic County District Court to recover the balance due on a $500 promissory note made by defendant in favor of plaintiff as payee resulted in a judgment in plaintiff's favor. Defendant appeals.
The note was executed by defendant on November 23, 1959 under the name of Doris LaRue, and she then represented that she was single. The proceeds of the $500 loan were used to pay off three outstanding note obligations of the defendant, which totaled $494.12, and the balance of $5.88 was paid to her in cash. Two of these note obligations represented moneys borrowed on September 28, 1959 and November 9, 1959 by Doris LaRue from the plaintiff. The third indebtedness covered a loan in the sum of $171.48 made to the defendant under the name of Doris LaRue on her application therefor on November 17, 1959. This loan was by Beneficial Finance Co. of Essex County, Newark, New Jersey, a different corporation from the plaintiff.
Defendant pleaded by way of defense that she had been granted a discharge in bankruptcy by the United States District Court for New Jersey on February 15, 1961 and had in those proceedings listed her indebtedness to plaintiff and had notified plaintiff thereof.
In its reply plaintiff alleged that when defendant executed the note sued upon she falsely and fraudulently represented to plaintiff that she was single when in fact she was married and her legal name was then Doris Norton; and that plaintiff had made the $500 loan to defendant in reliance on said misrepresentation. By reason thereof, plaintiff contended that defendant had not been released from her liability on the note as a result of her discharge in bankruptcy.
*580 The case was tried without a jury. Defendant admitted that she had married one John Norton on November 15, 1959 and that she had knowingly misrepresented that she was single when she applied to plaintiff and obtained the $500 note loan on November 23, 1959. This misrepresentation was material and was relied upon by plaintiff. The loan company then had a policy under which it would not make a loan to a newly married woman on the strength of her signature alone. In such cases, it required other security, such as the signature of the husband or some other person as a comaker, or an automobile or something such as that. This policy was grounded upon the practical business consideration that presumably a newly married woman does not plan to work for any length of time, since she may have a baby and will quit her job. Defendant admitted that she knew of this policy when she applied for the loan.
Despite the foregoing, defendant maintains there was no fraud because she had no intent to defraud. She testified that the reason why she had misrepresented that she was single was because she had only recently eloped, had not yet told her family, friends or employer about her marriage, and wanted to keep it quiet for a while. She said that she assumed that if she had given her marriage name the loan company would want to verify it and in doing so would inquire at her place of employment, where she had many friends in the personnel office, and thus her secret marriage would become known.
While concealment of her marriage from her family, friends and employer may have been the dominant motive which prompted defendant's deliberately false representation that she was single, she certainly intended plaintiff to rely upon this misrepresentation, well-knowing that if she told the truth she would not have obtained the loan on her signature alone. She intended to deceive and did deceive plaintiff into making a loan contrary to its established policy and to its potential damage in the light of her subsequent bankruptcy. But for her lie plaintiff would have had further *581 security. Her conduct was fraudulent even though she may have entertained no intention at the time of her misrepresentation not to repay the loan. The "intent" with which an act is done implies simply a purpose to commit the act and does not require an intent to violate the law or to injure another. 23 Am. Jur. Fraud and Deceit, § 121 (1939). All of the required elements to make out a case of fraud, as specified in Meier Credit Co. v. Yeo, 129 N.J.L. 82, 84 (Sup. Ct. 1942), were present, and the trial court properly so found.
Defendant contends, in the alternative, that if there was fraud in obtaining the loan, plaintiff subsequently waived the fraud. In support of her claim of waiver, defendant relies upon these additional facts. The first monthly payment on the note became due on December 23, 1959 and was not then paid. Instead, on December 29, 1959 defendant went to plaintiff's office and there told its manager that she was married, gave her new address, stated that she and her husband had been ill, requested a short extension of time within which to make the first payment, and her request was granted. Thereafter, she made the following payments: January 4, 1960, $11 for interest only; January 26, 1960, $27; March 9, 1960, $81; April 22, 1960, $27; May 25, 1960, $27; and June 30, 1960, $9.94. No other payments were made.
Defendant argues from the above facts that since plaintiff did not demand payment of the note in full, when it might have because of her default, or insist upon a comaker when it learned that she was married, its voluntary extension of time within which to make the first payment constituted a waiver of the fraud.
We find to the contrary. "Waiver consists of the intentional relinquishment of a known right. * * * It is a voluntary, clear and decisive act, implying an election to forego some advantage which the waiving party might have insisted on." Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134, 145 (App. Div. 1960). We are satisfied *582 that plaintiff's short extension of time within which to make the first payment was not intended as a waiver of the fraud.
There is an uncertainty in the trial record as to whether plaintiff's manager learned in his conversation with defendant on December 29, 1959 not only that she was then married but also that she had been married prior to her misrepresentation on November 23, 1959. She testified only that she told him she was married. She made no claim in her brief or at oral argument that she had told him on December 29, 1959 that she was married when she obtained the note loan in issue. However, this fact was assumed in a lengthy question addressed to plaintiff's manager on cross-examination.
Upon either assumption there was no waiver. If defendant did not tell plaintiff's manager on December 29, 1959 that she was married when she obtained the new loan, there was no evidence that he knew of the fraud. Hence, there could be no waiver of the fraud because of an absence of knowledge thereof. Deerhurst Estates v. Meadow Homes, Inc., supra; West Jersey Title and Guaranty Co. v. Industrial Trust Co., 27 N.J. 144 (1958); Lincoln Furniture Co. v. Bornstein, 100 N.J. Eq. 78 (Ch. 1926), affirmed 101 N.J. Eq. 774 (E. & A. 1927). If plaintiff's manager did learn on December 29, 1959 that defendant had misrepresented her marital status on November 23, 1959, the short extension of time within which to make the first payment was not such "a voluntary, clear and decisive act, implying an election to forego" the fraud as to constitute a waiver thereof. Plaintiff's conduct rather bespeaks a temporizing with the situation in the hope that the note would be paid. Its willingness to wait for a while cannot be equated with an intention to waive the fraud. There was no novation here as in Jones v. Gabrielan, 52 N.J. Super. 563 (App. Div. 1958). The promise to wait, unsupported by any legal consideration, was not contractually binding. The trial court found that the extension as to the first payment was of "no *583 significance." We conclude that it did not constitute a waiver of the fraud.
Defendant also argues that the misrepresentation must be as to "financial condition," and that a misrepresentation as to one's marital status is not enough under the Bankruptcy Act to preclude a release of the debt by a discharge in bankruptcy.
11 U.S.C.A. § 35, sub. a(2) provides:
"A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretences or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition. * * *" (Emphasis added)
The use of the disjunctive "or" satisfies us that the initial provision as to "false pretenses or false representations" means any conduct tantamount to fraud and is not limited to false representations as to one's financial condition. Moreover, "financial condition" within the intent of the statute may well include one's prospective financial condition, and it might be persuasively argued that the prospective personal earning power of a recently married woman is less favorable than that of a single woman for the reasons underlying the policy of the plaintiff as testified to in this case.
Defendant cites In re Hefner, 23 F. Supp. 521 (D.N.Y. 1938), which held that the bankrupt's misrepresentation as to marital status would not bar her discharge. There the bankrupt, an unmarried woman, signed a note as a comaker and as the wife of one James Wilson, the other comaker, with whom apparently she was living. But the misrepresentation as to her marital status was immaterial in that case. Here, the misrepresentation was material because the loan would not have been made on defendant's signature alone, if the lie had not been told. Hence, we find no merit in this contention by defendant.
*584 While defendant received only $5.88 in cash out of the proceeds of the $500 loan, the balance being used to pay off the pre-existing loans, the liability not dischargeable by the bankruptcy discharge is for the full amount of the $500 loan and not merely for the cash differential received by her. Personal Finance Company of New Jersey v. Bruns, 16 N.J. Super. 133 (App. Div. 1951). Incidentally, the loan of $171.48 obtained by defendant on November 17, 1960 under her maiden name of Doris LaRue on her misrepresentation that she was single is subject to the same infirmity as the subsequently merged loan of $500 on November 23, 1960.
There was uncontradicted testimony that the amount due for principal and interest on the $500 note, after giving credit for payments received, was $501.47. Judgment was entered in that amount.
The judgment is affirmed.