HUGHES, APPELLANT, *v.* HUGHES, APPELLEE.

[Cite as Hughes *v.* Hughes (1988), 35 Ohio St. 3d 165.]

(No. 87-479—Decided February 17, 1988.)

*Sharon L. Griffin,* for appellant.

*Rubin, Feldstein & Candiello* and *V. Robert Candiello,* for appellee.

HOLMES, J. The sole issue presented in this appeal is whether either Section 152(e), Title 26, U.S. Code, as amended by the Tax Reform Act of 1984 (P.L. 98-369), or the Sixteenth Amendment to the United States Constitution, precludes the domestic relations courts of this state from award-

ing the dependent child tax exemption to the noncustodial parent in a divorce proceeding. We answer such query in the negative, for the reasons which follow.

Section 152(e), applicable to tax years beginning after December 31, 1984, provides in pertinent part:

"(e) Support test in case of child of divorced parents, etc. —

"(1) Custodial parent gets exemption. — Except as otherwise provided in this subsection, if —

"(A) a child (as defined in section 151[e][3]) receives over half of his support during the calendar year from his parents —

"(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

"* * * and

"(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the 'custodial parent').

"(2) Exception where custodial parent releases claim to exemption for the year. — A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the *noncustodial parent if* —

"(A) *the custodial parent signs a written declaration* (in such manner and form as the Secretary may by regulations prescribe) *that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and*

"(B) *the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.*

"For purposes of this subsection, the term 'noncustodial parent' means the parent who is not the custodial parent."[1] (Emphasis added.)

This section unambiguously provides that the custodial spouse will be allowed the exemption unless that spouse declares that she will not claim it in favor of the noncustodial spouse. See, also, 1 Fed. Tax Reg. (1984) 1.152-4. The Staff of the Joint Congressional Committee on Taxation, 98th Congress, 2d Session, dated December 31, 1984, explained the reasons for the amendments:

"The prior rules governing the allocations of the dependency exemption

---

[1] The Sixteenth Amendment to the United States Constitution provides:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

Section 151(e), Title 26, U.S. Code granted the exemption itself, and provided in pertinent part:

"(e) Additional exemption for dependents.—

"(1) In general.—An exemption of $1,000 for each dependent (as defined in section 152)—

"(A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $1,000, or

"(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student.

"* * *

"(3) Child defined.—For purposes of paragraph (1)(B), the term 'child' means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer."

were often subjective and presented difficult problems of proof and substantiation. The Internal Revenue Service became involved in many disputes between parents who both claimed the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes was relatively high and the Government generally had little tax revenue at stake in the outcome. The Congress wished to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. *Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.*[2] (Emphasis added.)

The changes to Section 152 were made for the administrative convenience of the Internal Revenue Service. A domestic relations court has broad discretion to determine the proper mix and allocation of marital assets and property rights in a divorce proceeding. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 20 O.O. 3d 318, 421 N.E. 2d 1293. We find nothing in the legislative history of the Tax Reform Act to support appellant's theory that new Section 152 was meant to encroach upon this exclusive statutory power of state courts. That section merely states that, for purposes of the Internal Revenue Service, a presumption exists in favor of the custodial parent receiving the exemption, absent a declaration attached to the noncustodial parent's tax return. The only concern of the IRS, evident from the history surrounding the changes, is that only one divorced spouse claim and receive the deduction. Indeed, the Treasury Department has acknowledged the presence and underlying authority of state courts, via divorce decrees or separation agreements, to allocate dependency exemptions:

"The bill proposes a rule which is both simple and fair. While the new rule will not eliminate all controversies in this area, most disputes will be easily resolved by reference to the divorce or separation agreement. Moreover, allowing both parents to treat the child as a dependent for purposes of claiming the medical deduction will take much of the pressure off the allocation of the dependency exemption." Treasury Statement on H.R. 3475 (later H.R. 4170), Ronald Pearlman, Dep. Asst. Secy., Tax Policy, Before the House Ways and Means Committee (July 25, 1983).

Our holding today is necessarily limited. We cannot, for example, force a custodial parent to execute the requisite declaration. Nor can we hold that the divorce decree awarding dependency exemptions to the noncustodial parent may itself be attached to such parent's tax return and act as

---

[2] The Internal Revenue Service also fully endorsed this provision for its clarity and evenhandedness:

"Treasury strongly supports this section of the bill. In many cases, both parties to a divorce will claim a dependency exemption attributable to the same child. The IRS has little choice but to deny the exemption to both taxpayers, even though it knows that one spouse or the other is ·entitled to the exemption. Although the tax liability involved in these disputes generally does not exceed a few hundred dollars, the parties often are willing (because of the emotional nature of the issue) to litigate the matter at a cost far in excess of the value of the exemption. This wastes judicial and other Government resources and contributes significantly to the case backlog in the United States Tax Court." Treasury Statement on H.R. 3475 (later combined into H.R. 4170), Ronald Pearlman, Dep. Asst. Secy., Tax Policy, Before the House Ways and Means Committee (July 25, 1983).

the functional equivalent of the custodial parent's waiver. Section 152 does not provide for such a procedure, and we are without authority to bind the Internal Revenue Service to such a decision. See *Helvering* v. *Stuart* (1942), 317 U.S. 154. Our authority in this case is limited to a determination of the validity of the court's order, and the consequences which inure to the parties therefrom.

We can only speculate as to the determination the Internal Revenue Service will make should Mrs. Hughes choose to disobey the court order at issue herein and refuse to execute the exemption declaration. If, in such case, Internal Revenue Service follows the presumption set forth in Section 152 and awards the exemption to Mrs. Hughes, the custodial parent, then one of Mr. Hughes' options, in addition to appeal of the IRS ruling, would be a contempt of court action in state court against Mrs. Hughes, seeking enforcement of the court order. Such a scenario, although clearly burdensome to the noncustodial parent, maintains the integrity of the divorce decree and furthers the goal of Section 152, which is to provide certainty as to who may claim the dependency exemption. Thus, we hold that as part of the division of marital property in a divorce proceeding, a domestic relations court may award the dependency exemption permitted in Section 151, Title 26, U.S. Code, to the noncustodial parent. Such an order does not conflict with Section 152, Title 26, U.S. Code, nor with the Sixteenth Amendment to the United States Constitution.

For reason of the foregoing, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, LOCHER and H. BROWN, JJ., concur.

MOYER, C.J., DOUGLAS and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. The issue before us today is whether the subject matter jurisdiction of a state domestic relations court is broad enough to allow the awarding of a federal tax exemption.

It is undisputed that Section 152, Title 26, U.S. Code, specifically states a custodial parent is entitled to an exemption unless he or she expressly *releases* the right to claim it.[3] The legislative history to the statute consistently refers to the release as a waiver. The United States Supreme Court recently stated that "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin* v. *United States* (1979), 444 U.S. 37, 42.[4] The ordinary, contemporary and common definition of the word "release" is "the relinquishment, concession, or giving up of

---

[3] Section 152(e)(2), Title 26, U.S. Code provides as follows:

"Exception Where Custodial Parent Releases Claim To Exemption For The Year.—A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if,

"(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

"(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year. * * *"

[4] In fact, Ohio has codified this rule in R.C. 1.42.

a right, claim, or privilege * * *." Black's Law Dictionary (5 Ed. 1979) 1159.[5] Accordingly, the federal tax code indicates a custodial parent is entitled to an exemption for a child in all cases unless he or she voluntarily relinquishes or gives up that exemption.[6]

In my view, a court-ordered release is not the same as a "voluntary release." Hence, such a release does not comply with the tax code. Therefore, a domestic relations court has no power to "order" an individual to "voluntarily release" his or her lawful right to an exemption for a child in the division of the marital estate.

The majority reaches the curious conclusion that a domestic relations court may award a dependency exemption despite the explicit language of Section 152, Title 26, U.S. Code. I agree that a domestic relations court has broad discretion to determine the proper mix in allocation of marital assets and property rights in a divorce proceeding. However, the clear tenor

[5] See, also, *Fleming* v. *Warshawsky & Co.* (C.A. 7, 1941), 123 F. 2d 622, 626 (construing "release" with "waive"); *Shaw* v. *Close* (1968), 92 Ill. App. 2d 1, 3, 235 N.E. 2d 830, 831 ("release" is the giving up or abandoning of a claim or right); *Atlantic Natl. Ins. Co.* v. *Armstrong* (1966), 65 Cal. 2d 100, 112, 52 Cal. Rptr. 569, 577, 416 P. 2d 801, 809 (equates "waiver" and "release" in an analysis of an agreement to forgo collection of payments); *Commercial Ins. Co. of Newark* v. *Copeland* (1967), 248 Cal. App. 2d 561, 565, 56 Cal Rptr. 794, 797 ("release" is the relinquishment, concession, or giving up of a right, claim, or privilege); *Gronquist* v. *Olson* (1954), 242 Minn. 119, 125, 64 N.W. 2d 159, 163 (a "release" is a relinquishment, concession, or giving up of a right, claim, or privilege); *Woodrough* v. *Douglas Cty.* (1904), 71 Neb. 354, 361, 98 N.W. 1092, 1095 (holding a release is a "voluntary relinquishment"); *Coopey* v. *Keady* (1914), 73 Ore. 66, 76, 144 P. 99, 101 (a "release" is a relinquishment, concession or giving up of a right, claim, or privilege).

[6] I would find release to be synonymous with waiver. Both a release and a waiver require a voluntary act. See, generally, *People's Bank* v. *Pioneer Food Indus., Inc.* (1972), 253 Ark. 277, 282, 486 S.W. 2d 24, 28 ("waiver" is a voluntary relinquishment of a known right; *Brown* v. *Cranston* (1963), 214 Cal. App. 2d 660, 668, 29 Cal. Rptr. 725, 729 (to constitute waiver there must be a voluntary election); *Conner* v. *Fisher* (1964), 136 Ind. App. 511, 516, 202 N.E. 2d 572, 575 ("waiver" is the voluntary yielding up of some existing right); *Garden*

*City Production Credit Assn.* v. *Lannan* (1971), 186 Neb. 668, 676, 186 N.W. 2d 99, 106 ("waiver" is a voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intention that such right shall be surrendered), overruled on other grounds in *Farmers State Bank* v. *Farmland Foods, Inc.* (1987), 225 Neb. 1, 10, 402 N.W. 2d 277, 282; *Gerbig* v. *Gerbig* (1940), 60 Nev. 292, 295, 108 P. 2d 317, 318 (equates "waive[r]" with "voluntar[y]" acceptance); *Beneficial Finance Co. of Jersey City, Inc.* v. *Norton* (1962), 76 N.J. Super. 577, 581, 185 A. 2d 218, 220 ("waiver" is a voluntary, clear and decisive act, implying an election to forgo some advantage which the waiving party might have insisted on); *Peloso* v. *Hartford Fire Ins. Co.* (1968), 102 N.J. Super. 357, 367, 246 A. 2d 52, 58, reversed on other grounds (1970), 56 N.J. 514, 267 A. 2d 498; *Ed Black's Chevrolet Center, Inc.* v. *Melichar* (1970), 81 N.M. 602, 604, 471 P. 2d 172, 174 ("[i]n no case will a waiver be presumed or implied, contrary to the intention of the party whose rights would be injuriously affected thereby * * *"); *Wright* v. *State, ex rel. Iser* (1947), 189 Md. 218, 223, 55 A. 2d 849, 852 ("waive" means voluntary relinquishment); *Kerr* v. *Small* (1941), 112 Mont. 490, 494, 117 P. 2d 271, 273 (equates "waive" with "acquiesc[e]" in tax deed validity contest); *Gorge Lumber Co.* v. *Brazier Lumber Co.* (1972), 6 Wash. App. 327, 336, 493 P. 2d 782, 788 ("[a] waiver is the intentional and voluntary relinquishment of a known right"); *Smedley* v. *State Indus. Ct.* (Okla. 1977), 562 P. 2d 847, 849 (equates "waive" with "abandon, throw away, remove, repudiate, or surrender").

and language of the federal tax code indicates a trial court is without jurisdiction to award a tax exemption for a child in a divorce proceeding.

By stating a domestic relations court has the power to award a federal dependency exemption under Section 152, the majority has implicitly held that a domestic relations court may, under threat of contempt, force one to "release" his or her right to an exemption. Following such logic, a trial court may now force one to "release" other substantial rights under threat of contempt. Such precedent is unwise and may lead to other unsound conclusions.

The majority cannot sidestep the issue of whether the Section 152 release must be voluntary by claiming its opinion is "limited." The weakness of the majority opinion is compounded by its failure to adequately address this issue. We should not ignore the fact that the words "voluntary," "release" and "waiver" are homogenous.[7]

When we disregard the express intent and purpose of our lawmakers, we invade the political process and seize the power to amend statutes. This conduct violates the constitutional structure we are sworn to protect. Therefore, I respectfully dissent.

MOYER, C.J., and DOUGLAS, J., concur in the foregoing dissenting opinion.

---

[7] Interestingly, the majority does not mention the one state court decision that has properly interpreted the 1984 amendments to Section 152, Title 26, U.S. Code. See *Davis* v. *Fair* (Tex. App. 1986), 707 S.W. 2d 711.