Defendant-appellant, William Unger, appeals a Brown County Court of Common Pleas, Domestic Relations Division, decision granting plaintiff-appellee, Ruth Unger ("Unger"), legal custody of the parties' children, designating her the residential parent, and awarding her spousal and child support. We affirm.
The parties were married on August 6, 1983 in Fairborn, Ohio. Two children were born as issue of their marriage: Justin Unger on December 21, 1986, and Nicholas Unger on June 17, 1992. Unger filed a complaint for divorce and a motion for temporary support on August 17, 1995, thereby beginning a lengthy domestic case filled with numerous motions and hearings.
On August 17, 1995, the trial judge granted temporary orders designating Unger the residential parent and legal custodian of the minor children. The trial judge ordered appellant to pay $185.03 per week for child support and $100 per week for spousal support. On September 1, 1995, appellant filed a motion for modification of temporary orders, which was denied by the trial court after a hearing. In a judgment entry dated January 2, 1996, the trial judge ordered appellant to continue to pay his child and spousal support obligations and granted him visitation privileges.
A magistrate held a contempt hearing on March 6, 1996. On March 27, 1996, a hearing was held on the issues of incompatibility and continuance of temporary orders. At this hearing, the magistrate ordered appellant to continue making child and spousal support payments, as well as payments on the first mortgage of the marital residence. On April 17, 1996, the magistrate issued a report which found appellant in contempt of court for failing to pay spousal support.
On April 22, 1996, appellant filed objections to the magistrate's decision. Specifically, appellant objected to making payments on the first mortgage of the marital property, asked for a more detailed statement regarding child support, and asked for the right to claim the dependent children for tax purposes. Appellant requested a hearing on these issues.
Appellant filed a shared parenting plan ("SPP") with the trial court on May 29, 1996. In his proposal, appellant designated himself the residential parent and legal custodian of the children. Unger immediately filed a memorandum ill opposition to this motion.
On June 5, 1996, appellant submitted an amended SPP, in which he agreed to use Unger as his day-care provider for the children. Appellant proposed that he would pay Unger for her child care services in lieu of support. In addition, appellant filed a motion for mediation between the parties. Also on June 5, 1996, appellant submitted a proposed revision of his child support obligation.
On June 6, 1996, the marital relationship between the parties was terminated by a divorce decree. The issues of child custody, support, visitation, as well as property division and payment of debts were continued. Appellant was ordered to continue to pay his temporary support obligations and the first mortgage payments on the marital residence.
Appellant filed a second motion to modify temporary orders on July 25, 1996. Among other requests, appellant asked the court to vacate its temporary order for spousal support and to modify his child support obligation.
On March 26, 1997, following multiple hearings, the magistrate filed a decision which found that it was in the best interest of the children to designate Unger the residential parent and legal custodian of the minor children and to award visitation privileges to appellant. Appellant's child support obligation was reduced to $157.81 per week. In this decision, the magistrate denied appellant's second motion for modification of the temporary child and spousal support obligations. All child and spousal support arrearages accumulated pursuant to the temporary orders were reserved to Unger and deemed a charge against any proceeds to be distributed to appellant in the settlement. Appellant was ordered to pay $50 per week in spousal support for one year. The trial court judge adopted the magistrate's decision in an entry dated March 26, 1997.
Appellant filed objections to the magistrate's report on April 21, 1997. Relevant to this appeal, appellant objected to the following: the child support calculation; the trial court's failure to grant appellant the right to claim the minor children as dependents for tax purposes; the trial court's failure to grant appellant any child or spousal support credits in return for his payments on the first mortgage and other marital debts; the designation of Unger as residential parent and legal custodian of the minor children; and the trial court's failure to adopt appellant's SPP. Appellant's objections, dated April 21, 1997, were individually considered and overruled by the trial court judge in an entry filed on January 22, 1998.
Appellant now appeals, raising five assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FAILING TO RULE UPON DEFENDANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION OF THE HEARING OF 03/27/96 MEMORIALIZED BY DIVORCE DECREE DATED 06/06/96.
In his first assignment of error, appellant claims that it was error for the trial court to fail to rule on his objections to the magistrate's decision from the March 27, 1996, hearing. It appears that appellant is referring to the trial court's failure to respond to objections made on April 22, 1996 which followed the April 17, 1996 magistrate's report finding appellant in contempt. Appellant objected to making payments on the first mortgage for the marital property, and requested a more detailed statement regarding child support and the right to claim the minor children for tax purposes.[1]
Civ.R. 53(E)(3) allows for filing of objections to a magistrate's ruling within fourteen days of that decision. Upon the proper filing of objections, the court "may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Civ.R. 53(E)(4).[2]
When objecting to the magistrate's decision, appellant merely stated his objections without offering any evidentiary support and requested a hearing on these issues. It appears that the trial court did not acknowledge these objections before entering the divorce decree on June 6, 1996. However, the divorce decree stated that the issues of child custody, child and spousal support, visitation, and property issues would remain pending until a later date. Therefore, this decree was not a final determination of the issues contained in appellant's objections. Appellant had ample opportunity to present evidence in support of his objections at the October 23, 1996 hearing, which was a full day of testimony on these matters and others still before the trial court.
Appellant preserved his objections to the support calculations, the tax exemptions, and the first mortgage payments on the written record throughout the course of the proceedings. On June 5, 1996, appellant made a motion to revise his child support obligation. Appellant made a motion to modify temporary orders on July 25, 1996 which contained the same objections that were made on April 22, 1996.[3] Appellant's motion was denied by the magistrate and the decision was subsequently affirmed by the trial judge. On April 21, 1997, appellant made these same objections again. These objections were considered by the trial judge on January 22, 1998. After review of the record of the case, including the exhibits presented at hearing and the transcripts of the hearings, the judge overruled each of appellant's objections.
We find that appellant's objections made on April 22, 1996 were ultimately reviewed by the judge once a thorough evidentiary hearing involving these issues was held. Appellant's contention that these objections were never addressed by the trial court judge is without merit. Therefore, we overrule appellant's first assignment of error.
Assignment of Error No. 2:
 THE COURT ERRED IN FAILING TO PROPERLY DETERMINE THE AMOUNT OF CHILD SUPPORT.
In his second assignment of error, appellant claims that the magistrate's decision dated March 26, 1997, which decreased his child support obligation, should have been applied retroactively to the original order of temporary support or, in the alternative, to September 1, 1995, the date of appellant's motion to modify. Appellant claims that retroactive application would be appropriate for two reasons: First, appellant asserts that the reduction of support should be retroactive because the temporary orders were based solely upon ex parte information submitted by Unger, who according to appellant provided false information. Second, appellant argues that retroactive application is proper because the court's order of child support explicitly reserved the right to make such a modification.
When fashioning a child support order, a trial court must follow R.C. 3113.215. Rock v. Cabral (1993), 67 Ohio St.3d 108,110; Eickelberger v. Eickelberger (1994), 93 Ohio App.3d 221,223. The amount of child support payable, as calculated in accordance with R.C. 3113.215(D) and the corresponding child support worksheet, is rebuttably presumed to be the accurate amount of child support due. R.C. 3113.215(B)(1).
In this case, the trial court completed two child support worksheets. The first worksheet determined the amount of temporary support and was based on an affidavit submitted by Unger on August 17, 1995. The magistrate created a second child support worksheet when arriving at the decision of March 26, 1997. This second worksheet included the magistrate's determination of the annual incomes of the parties, based upon the evidence presented. As noted above, the revised child support order decreased appellant's obligation.
In extreme circumstances, equitable considerations allow retroactive modification prior to the date that child support was first ordered. Fraud may justify retroactive modification so that the party committing fraud does not economically benefit from its misrepresentation. Osborne v. Osborne (1992),81 Ohio App.3d 666, 674.
In this case, Unger attested that appellant's income was $47,000 per year and that her own income was $6,000 to $10,000 per year. Unger stated that because she was self-employed, her income varied from year to year. The trial court ultimately determined that the more accurate figures were $40,000 and $10,000, respectively. As a result, Unger's child support obligation of $185.03 per week was reduced to $157.81 per week. Upon review, we find no evidence in the record that Unger fraudulently misrepresented appellant's income. Therefore, retroactive modification to the date of the original order is not appropriate.
Appellant further asserts that even in the absence of fraud, retroactive application is appropriate. Appellant argues that the trial court reserved the right to retroactively modify child support in its original order and was therefore obligated to do so. We disagree. Just because a court reserves the right to take an action does not mean that it must take that action. The second assignment of error is hereby overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN NOT ORDERING AND OR [sic] AWARDING THE TAX EXEMPTIONS OR HEALTH CARE AND OVERRULING DEFENDANT'S REQUEST TO CLAIM THE CHILDREN AS EXEMPTIONS FOR FEDERAL STATE AND LOCAL [sic] FINDINGS.
In his third assignment of error, appellant claims that he should have been awarded tax exemptions for the minor children and that his health care costs should have been included as a credit on the child support worksheet. We will consider these issues separately.
The allocation of dependency exemptions between parents is a matter resting within the trial court's discretion.Eickelberger v. Eickelberger (1994), 93 Ohio App.3d 221,225-26, citing Hughes v. Hughes (1988), 35 Ohio St.3d 165. A trial court may award a dependency exemption to a nonresidential parent, despite the federal income tax code's presumption in favor of awarding the exemption to the residential parent, only if doing so will promote the best interest of the child. This occurs when the residential parent's income falls into a lower tax bracket than that of the nonresidential parent. Hurchanik v. Hurchanik (1996), 110 Ohio App.3d 628,630-31, citing Singer v. Dickinson, (1992), 63 Ohio St.3d 408,415.
R.C. 3113.21(C)(1)(e) (previously, R.C. 3113.21(C)(1)(f)) states in relevant part:
 The court in its order may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the payments for child support are current in full as ordered by the court for the year in which the children will be claimed as dependents. (Emphasis added.)
The court's judgment entry dated January 22, 1998 overruled appellant's request to claim the minor children for tax exemption purposes, finding that it was not warranted by the evidence. During the course of the hearings, appellant never offered any evidence on the issue of tax exemptions for dependents. The only evidence before the trial court on this point was the child support worksheet and Unger's Ohio income tax form from 1995. Appellant's tax forms are nowhere in the record.
Comparing the gross incomes of Unger and appellant, it does appear that appellant would gain the greatest economic benefit from claiming the two minor children as dependents. Unger's 1995 Ohio tax form shows that her exemptions exceeded her adjusted gross income. Under usual circumstances, this cursory observation might lead a trial court to inquire about which party would maximize the benefit of dependency tax exemptions. However, in this case, appellant was not current on his support obligations. Therefore, he was not eligible to receive the benefit of claiming tax exemptions for his minor children pursuant to R.C. 3113.21(C)(1)(e). See Davis v. Davis (1996),112 Ohio App.3d 518. The trial court clearly did not abuse its discretion when refusing appellant's request for the dependency exemptions.
Appellant also argues that he should have received a credit for his health care costs for the minor children on the child support worksheet. However, appellant never offered any evidence to the court as to the amount of his health care costs. Although appellant testified that the minor children were covered by his insurance plan, there is no indication of what out-of-pocket expenses appellant is paying, if any. Appellant cannot expect to be credited an amount when he has failed to show that any amount is due to him.
Based upon the foregoing, we find that the trial court did not err when it refused to award appellant the dependency tax exemptions, or when it failed to credit appellant with any health care costs on the child support worksheet. The third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN ORDERING DEFENDANT TO PAY MONETARY SPOUSAL SUPPORT AS WELL AS IN-KIND SPOUSAL SUPPORT VIA PAYMENT OF THE 1ST MORTGAGE.
In his fourth assignment of error, appellant argues that the trial court erred in ordering him to pay monetary spousal support as well as "in-kind" spousal support through payment of the first mortgage on the marital residence. Under this assignment of error, appellant first contends that the court failed to properly consider Unger's testimony regarding her voluntary underemployment and self-professed lack of need.
The trial court makes the factual finding of whether a parent is underemployed based on the unique circumstance of each case.Rock v. Cabral (1993), 67 Ohio St.3d 108, 112. Absent an abuse of discretion, an appellate court will defer to the trial court's determination of this issue. More than a mistake of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
At a hearing before the trial court, Unger testified that she runs her own daycare business, making just $6,000 to $10,000 per year. Unger testified that she had previously worked as a certified nurse assistant and as a shift supervisor, but that she now enjoys running her own daycare. This arrangement also means that Unger is able to provide her children's own child care. Unger testified that her nurse certification has expired, and she does not have a college degree. Appellant failed to demonstrate that Unger is not employed to her full capacity, taking into consideration that she is the residential parent of the minor children. See Carman v. Carman (1996), 109 Ohio App.3d 698,703; Goode v. Goode (1991), 70 Ohio App.3d 125,130. We find that the trial court's refusal to find that Unger was underemployed was within its sound discretion.
Second, appellant asserts that his payments towards the first mortgage payment on the marital residence should be credited toward his spousal support obligation. When determining the appropriate spousal support obligation, the trial court shall consider R.C. 3105.18(C)(1)(a) through (n). A trial court has broad discretion in arriving at its decision regarding a possible spousal support award. Absent an abuse of discretion, a spousal support award will not be overturned. Carman v.Carman (1996), 109 Ohio App.3d 698, 703, citing Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 130.
In a decision dated March 26, 1997, the magistrate ordered appellant to pay $50 per week in spousal support for one year. Appellant's temporary order of spousal support was $100 per week. Therefore, the magistrate reduced appellant's spousal support obligation by one-half, ordering the payments to continue for only one year from the date of entry. The magistrate stated that he had considered appellant's claim for an offset of in-kind support and all of the factors of R.C.3105.18 when determining appellant's obligation. The trial court affirmed the magistrate's decision. We find no abuse of discretion in the trial court's decision. The fourth assignment of error is overruled accordingly.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED IN DESIGNATING PLAINTIFF THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE TWO MINOR CHILDREN.
In his fifth assignment of error, appellant argues that the trial court's designation of Unger as the residential parent and legal custodian was an abuse of discretion and against the manifest weight of the evidence. Appellant also contends that the trial court should have granted his motion for shared parenting.
In matters relating to the allocation of parental rights and responsibilities for the care of minor children, the trial court is vested with broad discretion. A trial court's decision regarding these issues is subject to reversal only upon a demonstration of an abuse of that discretion. Masters v.Masters (1994), 69 Ohio St.3d 83, 85. The trial court must promote the best interest of the children when making an allocation of parental rights. R.C. 3109.04(B)(1). When ascertaining the children's best interest, the trial court shall consider the factors listed by R.C. 3109.04(F) (1)(a)-(j).
When reviewing an assignment of error alleging that a decision was against the manifest weight of the evidence, "an appellate court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court." Myers v. Garson (1993), 66 Ohio St.3d 610,615-616. See, also, Bechtol v. Bechtol (1990),49 Ohio St.3d 21.
Reviewing under R.C. 3109.04(F)(1)(a)-(j), there is ample evidence to support the trial court's decision to designate Unger the residential parent and legal custodian. At the hearing, several witnesses who had used Unger's child care service testified that Unger took very good care of their children as well as her own. There was testimony as to Justin's declining performance in school during the last year, but there was no showing that this was due to Unger being designated the temporary residential parent. Rather, Justin's poor performance appeared to be a result of the stress of the breakdown of his parent's marriage.
Dr. Handel, a licensed psychologist, attested to the fact that the children seemed more comfortable in their mother's care than in their father's care, although the doctor did say that the children evidently loved and respected their father. Also, appellant testified that he had not paid his child support payments in full. Finally, although appellant filed contempt motions citing Unger for failure to cooperate with visitation, these motions were overruled by the court.
We find that there was competent, credible evidence supporting the trial court's allocation of parental rights. The trial court's decision was therefore not an abuse of discretion and must remain undisturbed.
Appellant also argues that the trial court erred by failing to adopt his SPP. When deciding whether a SPP should be adopted, the trial court shall consider all relevant factors including, but not limited to, R.C. 3109.04(F)(1)(a)-(j) and the following:
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
R.C. 3109.04(F)(2)(a)-(e). The approval of a SPP is discretionary with the trial court. If the trial court does not determine that the SPP is in the children's best interest, then it shall reject the plan. R.C. 3109.04(D)(1)(b).
Much of the evidence presented to the court below suggested that adopting a SPP would not be in the children's best interest. Dr. Handel testified that the parties had a conflictive relationship and that "they're not people who are likely to compromise easily." The doctor did not rule out the possibility of shared parenting altogether, but he cautioned that both parties would have to be committed to it for it to work. Appellant testified that he wanted to try shared parenting. However, Unger objected to appellant's motion for shared parenting, stating that she did not believe that there was cooperation between the parties and that it would not be in the best interest of the children. Moreover, Unger testified that appellant berated her on several occasions and displayed violent tendencies. Unger stated that while in the presence of the children, appellant threatened to kill her. She also testified that appellant had called the children to tell them that their mother was trying to kill them.
After full consideration of the testimony at the hearings and the submitted evidence, as well as R.C. 3109.04, the trial court found that adopting the SPP (or the amended SPP) was not in the best interest of the children. Appellant and rebuttal witnesses offered different perspectives on these issues. However, in the absence of a showing of abuse of discretion, we defer to the trial court's factual findings. We find that the trial court's rejection of the SPP was well within its sound discretion. Therefore, the fifth assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] At the March 27, 1996 hearing, appellant's counsel asked the magistrate if appellant was obligated to pay for the first mortgage on the marital property. The magistrate responded:
 Well, that's the concern at the previous hearing was that the prior Entry did not cover one of the obligations and the Court, looking at it at that time and looking at it again, it's my view of it that that was not discussed in the Entry because it was implicit or implied or agreed otherwise even though, not stated, that that payment was going to continue to be made and I've represented to Mr. Montgomery that's the way this Court would interpret that if that issue is going to become an issue.
The court did not make a written order requiring appellant to make first mortgage payments until June 6, 1996 in the divorce decree. However, the magistrate's report dated April 17, 1996 found appellant in contempt of court for failing to meet his court-ordered obligations. Appellant objected to these obligations, including the magistrate's verbal order to make payments on the first mortgage, on April 22, 1996.
[2] Effective, July 1, 1998, Civ.R. 53(E) was revised, and this subsection has been renumbered and rephrased. Because the revised rule did not take effect before the matter at issue here, we will refer to the rule as it existed at the time of the proceedings in this case.
[3] In addition, on November 15, 1996, appellant filed a document reminding the court of his previous motions to revise his child support obligation and modify the temporary spousal support and child support orders.